# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

DANIEL P. FLING ) 
           )
       Plaintiff, )
           )
v. )      Civil Action No. 1:17-cv-1266-LO-JFA
           )
MEGAN J. BRENNAN, )
POSTMASTER GENERAL, *et al.* )
           )
       Defendants. )
           )

## MEMORANDUM IN SUPPORT OF DEFENDANT ALEXANDRA HEYWOOD'S MOTION TO DISMISS AND AWARD ATTORNEYS' FEES

Edward Lee Isler
Micah E. Ticatch
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant*
*Alexandra Heywood*

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT .......................................................................................................5

    I.    Plaintiff's Defamation Claims Must Be Dismissed Because
        Ms. Heywood's Statements Were Neither False Nor Defamatory. ........................5

        A.    Ms. Heywood's Email To Lillian Court Is Not An Actionable
               Communication. ..........................................................................8

        B.    Even If Analyzed Separately, None Of Ms. Heywood's Statements
               Are Actionable. ..........................................................................10

        C.    Even If Ms. Heywood's Email Had Contained Actionable
               Statements, The Defamation Claim Still Fails Because The
               Communication Was Privileged. ....................................................18

    II.    Plaintiff Cannot State A Claim For Tortious Interference Because There
        Was No Intentional Interference or Improper Methods. ........................................19

        A.    Plaintiff Has Not Alleged Intentional Interference. ...................................20

        B.    Plaintiff Cannot Show That Ms. Heywood Used Improper Methods. ........21

    III.    Under Virginia's Anti-SLAPP Law, Ms. Heywood Is Immune To
         Plaintiff's Claims And Entitled To An Award Of Her Attorneys' Fees. ...............22

        A.    Ms. Heywood's Statements Are Covered by the Virginia
               Anti-SLAPP Law Because She Was Addressing a Matter of
               Public Concern. ..........................................................................23

        B.    Plaintiff's Claims Against Ms. Heywood Must Be Dismissed
               Under Virginia's Anti-SLAPP Law Because She is Immune to
               Such Claims. ..............................................................................24

        C.    Ms. Heywood Should Be Awarded Her Reasonable Attorneys' Fees. .......25

CONCLUSION ....................................................................................................27

i

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Besen v. Parents & Friends of Ex-Gays, Inc.*
    2012 WL 1440183 (E.D. Va. 2012)............................................................................. 25

*Biospherics, Inc. v. Forbes, Inc.*
    151 F.3d 180 (4th Cir. 1998) ...................................................................................... 7, 8

*Breazeale v. Victim Servs., Inc.*
    878 F.3d 759 (9th Cir. 2017) ......................................................................................... 22

*Castello v. City of Seattle*
    2010 WL 4857022 (W.D. Wash. 2010)......................................................................... 25

*Chapin v. Knight-Ridder, Inc.*
    993 F.2d 1087 (4th Cir. 1993) .................................................................................. 5, 6, 8

*Cominelli v. The Rector & Visitors of The Univ. of VA*
    589 F. Supp. 2d 706 (W.D. Va. 2008), *aff'd* 362 F. App'x 359 (4th Cir. 2010) ........... 20

*Cunningham Energy, LLC v. Outman*
    2013 WL 5274361 (S.D. W. Va. 2013) .......................................................................... 6

*Durham v. Jones*
    737 F.3d 291 (4th Cir. 2013) ........................................................................................ 23

*Garcetti v. Ceballos*
    547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)............................................. 23

*Gomer v. Home Depot U.S.A., Inc.*
    2016 WL 5791226 (D. Md. 2016) ................................................................................. 18

*Hanks v. Wavy Broad., LLC*
    2012 WL 405065 (E.D. Va. 2012)............................................................................. 5, 25

*Jenkins v. Snyder*
    2001 WL 755818 (E.D. Va. 2001)................................................................................... 6

*Lane v. Franks*
    134 S. Ct. 2369 189 L. Ed. 2d 312 (2014) ................................................................... 23

*Nexus Services, Inc. v. Vance*
    2018 WL 542977 (W.D. Va. 2018) ................................................................................. 6

*Phantom Touring, Inc. v. Affiliated Publications*
    953 F.2d 724 (1st Cir. 1992) ........................................................... 8

*Skillstorm, Inc. v. Elec. Data Sys., LLC*
    666 F. Supp. 2d 610 (E.D. Va. 2009) ............................................ 21

*Snyder v. Phelps*
    562 U.S. 443, 131 S. Ct. 1207 (2011)............................................ 23

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of CA v. Yagman*
    55 F.3d 1430 (9th Cir. 1995) .......................................................... 8

*Twigg v. Triple Canopy, Inc.*
    2010 WL 2245511 (E.D. Va. 2010)................................................ 1

*Virginia Citizens Def. League v. Couric*
    2017 WL 2364198 (E.D. Va. 2017)............................................ 5, 6

*Williams v. Cordillera Commc'ns, Inc.*
    2014 WL 2611746 (S.D. Tex. 2014) ............................................ 23

*Zhang v. Regan*
    2011 WL 1456188 (E.D. Va. 2011)............................................. 25

## STATE CASES

*Cummings v. Addison*
    84 Va. Cir. 334 (Norfolk 2012) ................................................... 22

*Doe No. 1 v. Burke*
    91 A.3d 1031 (D.C. 2014) ........................................................... 22

*Doe No. 1 v. Burke*
    133 A.3d 569 (D.C. 2016) ...................................................... 25, 26

*DurretteBradshaw, P.C. v. MRC Consulting, L.C.*
    277 Va. 140, 670 S.E.2d 704 (2009)........................................ 19, 20

*Jordan v. Kollman*
    269 Va. 569, 612 S.E.2d 203 (2005)........................................... 5, 7

*Mann v. Quality Old Time Serv., Inc.*
    139 Cal. App. 4th 328 (2006) ...................................................... 25

iii

*Preferred Sys. Sols., Inc. v. GP Consulting, LLC*
    284 Va. 382, 732 S.E.2d 676 (2012).......................................................... 20

*Schaecher v. Bouffault*
    290 Va. 83, 772 S.E.2d 589 (2015)..................................................... 5, 7-9, 11

*Smalls v. Wright*
    241 Va. 52, 399 S.E.2d 805 (1991)............................................................... 18

*Tomlin v. Int'l Bus. Machines Corp.*
    84 Va. Cir. 280 (Fairfax 2012)..................................................................... 22

*Webb v. Virginian-Pilot Media Companies, LLC*
    287 Va. 84, 752 S.E.2d 808 (2014)............................................................. 5, 6

## STATUTES

D.C. Code §16-5504 ............................................................................................ 26

Va. Code § 8.01-223.2 ........................................................................ 1, 22, 24, 26

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1

## MEMORANDUM IN SUPPORT OF DEFENDANT ALEXANDRA
## HEYWOOD'S MOTION TO DISMISS AND AWARD ATTORNEYS' FEES

Defendant Alexandra Heywood submits this Memorandum in Support of her Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for an Award of Attorneys' Fees pursuant to Virginia Code § 8.01-223.2 (the "Virginia Anti-SLAPP Law").

### BACKGROUND

Defendant Alexandra Heywood is a single female who, since July 2014, has lived alone in a condominium in the Lillian Court complex in McLean, Virginia.  The building in which Ms. Heywood resides has a mailroom on the bottom floor, where each unit has an assigned mail box for receiving letters and small packages.  Occasionally, when a resident at Lillian Court receives large packages they are delivered to the resident's door.  In all other circumstances, mail is delivered to the mailboxes located on the bottom floor of the building.

According to the Amended Complaint, from approximately 2015 until 2017, Plaintiff was involved in the delivery of mail to Ms. Heywood's building for the U.S. Postal Service.  *See* Amended Complaint ¶ 18 and Exhibit 1 (ECF No. 9-1) (the "Email").[1]  During this time, Ms. Heywood had several interactions with Plaintiff, many of which she found to be unusual. *See id.*

For example, the first time Ms. Heywood met Plaintiff, Ms. Heywood was surprised at how long the conversation lasted and she found it difficult to politely find a way to end it.  *See id.*  On a subsequent occasion, Plaintiff personally delivered Ms. Heywood's mail directly to Ms. Heywood's apartment on the third floor, rather than her mailbox, despite the fact she had not received any packages that day.  *See id.*  On several subsequent occasions, Ms. Heywood ran into

---

[1] The Court may properly consider exhibits attached to the Amended Complaint in analyzing a motion under Rule 12(b)(6).  *See, e.g., Twigg v. Triple Canopy, Inc.,* 2010 WL 2245511, at *2 (E.D. Va. 2010).

the Plaintiff in the hallway right outside her door in the morning as she was leaving for work. *See id.* On each of these occasions, Ms. Heywood spoke with the Plaintiff, but walked away feeling that he seemed overly interested in how she was doing. *See id.* Around Christmas 2016, Plaintiff delivered to Ms. Heywood a seemingly expensive Christmas card with her name professionally embossed on it, along with a bag of cookies from a local bakery. *See id.*

Finally, on the evening of January 10, 2017, when Ms. Heywood arrived home, unbeknownst to her, Plaintiff was parked in a non-postal service car outside Ms. Heywood's building, in a spot reserved for residents intending to park for 10 minutes or less. *See id.* As Ms. Heywood walked to the front door of her building, Plaintiff, who was not dressed in his postal uniform, got out of his car and hurried up to follow Ms. Heywood into her building. *See id.* Plaintiff engaged Ms. Heywood in a conversation while they were entering the building and continued to speak with her once they entered the lobby. *See id.* Ms. Heywood again found it difficult to find a polite way to end this conversation. *See id.* During that conversation, Plaintiff stated that he had come to the building to "see a friend," but he had never previously mentioned having any friends in Ms. Heywood's building in their prior conversations. *See id.*

Over time, the above encounters with Plaintiff led Ms. Heywood to experience a growing sense of unease regarding Plaintiff. *See id.* While she recognized it was possible that each of the above interactions may have innocent explanations, she was also genuinely concerned with Plaintiff's actions. *See id.*

Not wanting to jump to any conclusions, following the January 10 encounter, Ms. Heywood took the reasonable step of writing an email to the managers of her condominium on January 11, 2017, to let them know of her interactions with Plaintiff. *See id.*

In order to alleviate any chance of misunderstanding, in drafting the Email, Ms. Heywood took care to truthfully lay out the details of the various interactions that had occurred between herself and Plaintiff.  *See id.*  In doing so, Ms. Heywood included both the details that were leading her to have concerns, as well as details that would allow a reader to drawn their own conclusions.  *See id.*  For example, in the Email, Ms. Heywood openly acknowledged that she had given Plaintiff permission to give her a Christmas card in advance of his doing so, and that she had given Plaintiff a small Christmas gift herself.  *See id.*

The Email Ms. Heywood sent the managers stated, in its entirety, the following:

**From**:      Alexandra Heywood [mailto:alexandra.heywood@gmail.com]
**Sent**:      Wednesday, January 11, 2017 7:11 PM
**To**:        manager@lilliancourt.com; asstmanager@lilliancourt.com
**Subject**:   Report of a few odd occurrences with Lillian Court mail carrier

Hello,

As a follow-up to my discussion with the Lillian Court office this afternoon, I wanted to document for the record a few odd occurrences with our mail carrier, Daniel.  Please note that I am not making any allegations; the below is merely a series of odd coincidences/occurrences with which I am growing increasingly uneasy.  I apologize for the length of this email - I wanted to make sure everything was in context.

- I met Daniel for the first time in 2014 or 2015 when he was temporarily assigned to this location; he told how much he wanted this route.  I remembered it being hard to end the conversation.

- Many months later (perhaps a year?), he knocked on my door, reminded me who he was (we had only met that one time), said he had been assigned to this route permanently, asked me how I was doing, and handed me my mail (just letters, no packages).  He didn't seem to have anyone else's mail with him.

- In the past six months, I've run into him a few times in the hall just outside my door in the mornings (ostensibly he was delivering packages). It struck me as a little odd how interested he was in how I was doing and how often I seemed to run into him.

- In mid-December 2016, he asked me if he could give me a Christmas/holiday card.  I was a little taken aback but said sure.

- On the morning of December 21, I ran into him in the lobby of 1645 (he had packages for delivery).  He asked if I was going away (I had my suitcase) and insisted on carrying my suitcase down the few stairs of the walk despite my

protest. Then he needed me to let him back in again since the door had closed.

- When I returned from my trip, there was a very beautiful card (Crane paper, with my name professionally embossed on it) and a bag of cookies from a local bakery hanging on my door handle. (Just after this, I left a $15 gift card in my box per the USPS website guidance on appropriate holiday gifts for mail carriers with a polite but impersonal note, as I have done for mail carriers in other locations.)

- Yesterday, January 10, when I was parking my car at approximately 6:30pm, I noticed a man sitting alone (seemingly doing nothing) in a sedan in the 10-minute parking space outside of 1645. When I was about halfway up the walk to 1645, the man exited the car and called to me (it was Daniel). He hurried up, talked to me, said he was there to "see a friend", and followed me into the lobby of 1645. I again had trouble ending our conversation. Finally I went to check my mailbox and he got in the elevator; I didn't see him after this. I was very uncomfortable during this whole encounter. There was no mail truck to be seen and he had never mentioned having a friend in the building before.

Thank you,
Alexandra Heywood, [address]

*Id.*

Although Ms. Heywood did not send the Email to the Postal Service, Plaintiff contends Ms. Heywood's email indirectly led to the termination of his employment. *See* Amended Complaint ¶ 67. In an apparent effort to punish Ms. Heywood for this result, Plaintiff has asserted unmeritorious claims against her for defamation and tortious interference with business relations. *See* Amended Complaint, Counts Two – Four. However, because Ms. Heywood's statements in the Email were truthful, not defamatory, privileged, and not intended to interfere with Plaintiff's employment relationship, there is no basis for these actions. Plaintiff's claims should therefore be dismissed with prejudice.

Moreover, because Ms. Heywood's communication involved a matter of public concern, her speech is fully protected and immune under the recently enacted Virginia Anti-SLAPP Law. Moreover, under that statute, Ms. Heywood is entitled to an award of her attorneys' fees in bringing this Motion.

4

<u>**ARGUMENT**</u>

I.   **Plaintiff's Defamation Claims Must Be Dismissed Because Ms. Heywood's <u>Statements Were Neither False Nor Defamatory.</u>**

To state a claim for defamation,[2] a plaintiff must allege the publication of an actionable statement that is both <u>false and defamatory</u>.  *See, e.g., Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015).  As the Virginia Supreme Court has held, a trial court has an "essential gatekeeping function" to provide "that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages." *Webb v. Virginian-Pilot Media Companies, LLC*, 287 Va. 84, 90, 752 S.E.2d 808, 811 (2014).

Consequently, both state and federal courts routinely dismiss defamation claims on early dispositive motions when the statements at issue are either not false or not defamatory.  *See, e.g., Schaecher*, 290 Va. at 106, 772 S.E.2d at 601 (affirming trial court's dismissal of defamation claim on demurrer); *Webb,* 287 Va. at 91, 752 S.E.2d at 812 (reversing trial court's failure to dismiss defamation claim on demurrer); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091 (4th Cir. 1993) (affirming dismissal of defamation claims on 12(b)(6) motion); *Virginia Citizens Def. League v. Couric*, 2017 WL 2364198, at *6 (E.D. Va. 2017) (dismissing defamation claims on 12(b)(6) motion).

*False Statements*

Because true statements are protected by the First Amendment, a statement must be false in order to be actionable.  *See, e.g., Jordan v. Kollman*, 269 Va. 569, 575-576, 612 S.E.2d 203,

---

[2] Plaintiff has asserted separate counts for both defamation *per se* and defamation *per quod*.  *See* Amended Complaint, Counts Two and Three.  The major distinction between these two claims is whether Plaintiff is required to prove special damages.  *E.g., Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *12 (E.D. Va. 2012).  Because Ms. Heywood does not contest the fact that Plaintiff has pled special damages, for the purpose of this Motion these two claims can be properly analyzed together.

206-207 (2005).  Moreover, a statement that has only "slight inaccuracies" is not false for the purposes of defamation law.  *See id.*  As long as a statement is "substantially true," it cannot form the basis of a defamation claim.  *Id.*

As an alternative to showing that a statement was literally false, a plaintiff can meet the falsity requirement by demonstrating the speaker's statement, while literally true, leads to a false implication regarding the plaintiff.  *See, e.g., Webb*, 287 Va. at 89, 752 S.E.2d at 811.  However, any alleged implication must be "reasonably drawn from the words actually used."  *Id.*  As this Court has recently stated:

> the court must determine whether the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains. In making this evaluation, courts must accept reasonable inferences in the plaintiffs' favor, but must resist using innuendo to extend the meaning of defamatory language beyond its ordinary meaning. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain.

*Virginia Citizens Def. League v. Couric*, 2017 WL 2364198, at *4 (E.D. Va. 2017).

Where the ordinary meaning of the words used by the speaker cannot reasonably be said to imply the innuendo the plaintiff alleges, a trial court should dismiss the claim.  *See, e.g., id.* at *6; *Nexus Services, Inc. v. Vance*, 2018 WL 542977 at *6 (W.D. Va. 2018).

Moreover, when a plaintiff asserts a defamation by implication claim, the First Amendment requires that the "language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author <u>intends or endorses the inference</u>."  *Chapin*, 993 F.2d at 1093 (emphasis added); *see also Jenkins v. Snyder*, 2001 WL 755818, at *4 (E.D. Va. 2001); *Cunningham Energy, LLC v. Outman*, 2013 WL 5274361, at *3 (S.D. W. Va. 2013).  Consequently, a court should dismiss a defamation claim based on an implication where either the plain language of a statement does not reasonably impart the alleged

innuendo or where the language does not affirmatively suggest the author intended the alleged inference.

***Protected Opinion***

Because of the requirement that any actionable statement must be false, statements that cannot be "objectively characterized as true or false" are by definition not actionable. *See, e.g., Schaecher*, 290 Va. at 102-103, 772 S.E.2d at 599-600. This means that as a general matter, statements of opinions, those which represent the viewpoint of the speaker, or those that are relative in nature cannot be the basis of defamation claim. *See Jordan*, 269 Va. at 575-576, 612 S.E.2d at 206-207.

In some circumstances, statements of opinion may be actionable if they clearly imply facts that are false and defamatory. *See Schaecher*, 290 Va. at 103-104, 772 S.E.2d at 600-601. However, such statements of opinion are <u>never actionable</u> if the speaker fully explains the truthful factual basis for her opinion in her statement. *See, e.g., id.,* 290 Va. at 105, 772 S.E.2d at 602; *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998).

For example, in *Schaecher*, the speaker communicated that the plaintiff was "lying and manipulating facts to her benefit." 290 Va. at 104, 772 S.E.2d at 601. The Virginia Supreme Court insinuated that if there had been no context given for this statement, it might be actionable because it could imply the potentially false fact that the plaintiff was dishonest. *See id.* However, in that case, the statement at issue was not made in isolation, but rather was part of an email where the speaker provided two paragraphs of text describing discrepancies in the plaintiff's prior statements that led the speaker to regard the plaintiff as a liar. *See id.*

The Court noted there were multiple potential explanations for the discrepancies identified in the communication including, "mistake, miscommunication, deliberate lying, or a

genuine evolution of external facts that produced a change of circumstance." *Id.,* 290 Va. at 105, 772 S.E.2d at 601. Thus, it was possible that the defendant's accusation of deliberate lying was not actually accurate. Nonetheless, the Virginia Supreme Court held that because the speaker had disclosed the factual basis for her accusation, the suggestion that the plaintiff was deliberately lying was fully protected opinion and could not constitute an actionable statement. *See id.* (citing *Biospherics,* 151 F.3d at 185; *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730 (1st Cir. 1992); *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of CA v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995)).

***Defamatory Statements***

In addition to the requirement that a statement be false, in order to be actionable, a statement "must have the requisite defamatory 'sting' to one's reputation." *Schaecher*, 290 Va. at 92, 772 S.E.2d at 594. Such a sting only exists when the language at issue "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* However, language that is merely insulting, offensive, or unpleasant is not defamatory or actionable. *See id; Chapin*, 993 F.2d at 1092.

**A.    Ms. Heywood's Email to Lillian Court Is Not An Actionable Communication.**

When analyzing whether a communication is actionable under Virginia law, the "publication must be taken as a whole." *Schaecher*, 290 Va. at 93-94, 772 S.E.2d at 595.

In looking at Ms. Heywood's Email holistically, it is clear that Ms. Heywood is expressing an opinion that she was worried about the interactions she had with Plaintiff and that those interactions were making her feel uneasy. Contrary to Plaintiff's assertions in the

Amended Complaint, Ms. Heywood's Email did not affirmatively state that Plaintiff had committed any conduct that would violate his obligations as a postal carrier or any criminal laws.

In an effort to ensure the expression of her opinion did not lead to any confusion on the reader's part, Ms. Heywood did precisely what the common law encourages – she fully outlined the factual basis for why she had reached the point of being concerned by relaying a description of each of her interactions with Plaintiff. In doing so, not only did Ms. Heywood include the details that would tend to substantiate her feelings of concern, but she also included information that might support other varying conclusions. For example, Ms. Heywood openly acknowledged that she had given Plaintiff permission to give her a Christmas card in advance of his doing so, and that she had given Plaintiff a small Christmas gift herself.

Judging from the Amended Complaint, it seems that Plaintiff does not dispute that each of the meetings between the parties identified in the Email occurred substantially as Ms. Heywood described them. *See* Amended Complaint ¶ 53(a)-(g). As such, any opinion Ms. Heywood expressed based on those interactions is fully protected opinion and not actionable under Virginia law. *See, e.g., Schaecher*, 290 Va. at 105, 772 S.E.2d at 601.

In the Email, Ms. Heywood did *not* imply that Plaintiff had violated any laws or postal regulations, or that he would do so in the future. However, even if she had expressed such a belief, such an opinion would be fully protected and nonactionable under the law because she disclosed the factual basis for that opinion in the Email. *See id.* As such, there is no basis for asserting a claim of defamation based on the Email and Plaintiff's claims of defamation must be dismissed with prejudice.

9

**B.      Even if Analyzed Separately, None of Ms. Heywood's Statements Are Actionable.**

Perhaps recognizing that when the Email is viewed holistically it is not actionable, Plaintiff in his Amended Complaint attempts to dissect the Email sentence-by-sentence looking for any excuse to argue he has been defamed.  Even if this were the appropriate way to analyze the communication, it still would not support Plaintiff's claim for defamation.

In response to Plaintiff's allegations, below is an analysis of every line of text in the Email.  It is clear that even when broken down to a sentence-by-sentence analysis, there is no plausible claim that Ms. Heywood made any statements that are actionable in the Email.

*Opening Paragraph*

In the Amended Complaint, Plaintiff falsely asserts that in the opening paragraph of the Email Ms. Heywood "states or implies that [Plaintiff] did things to make her objectively or reasonably 'uneasy,' which he did not."  *See* Amended Complaint.  This is not accurate.  In fact the opening paragraph states in full:

> As a follow-up to my discussion with the Lillian Court office this afternoon, I wanted to document for the record a few odd occurrences with our mail carrier, Daniel.  Please note that I am not making any allegations; the below is merely a series of odd coincidences/occurrences with which I am growing increasingly uneasy.  I apologize for the length of this email - I wanted to make sure everything was in context.

As is readily apparent from reading the above, Ms. Heywood is stating her personal viewpoint that she is "growing increasingly uneasy" for the "odd occurrences" involving herself and Plaintiff.

In contrast to Plaintiff's allegations, Ms. Heywood did not say anything about her feelings being "objectively or reasonably" true.  Instead, Ms. Heywood does the precise opposite, and exactly what the common law encourages a speaker who is expressing an opinion to do – she explains, in the bullet points below, the factual basis for her opinion so that there is

10

no confusion with regard to the events to which she is referring. As such, her opinion is clearly protected and nonactionable. *See, e.g., Schaecher*, 290 Va. at 105, 772 S.E.2d at 601. Plaintiff's suggestion to the contrary is meritless.

### First Bullet Point

In the first bullet point of the Email, Ms. Heywood states the following recollection:

> I met Daniel for the first time in 2014 or 2015 when he was temporarily assigned to this location; he told how much he wanted this route. I remembered it being hard to end the conversation.

Plaintiff does not dispute the accuracy of first sentence above. *See* Amended Complaint ¶ 53(b). Instead, Plaintiff argues that Ms. Heywood's feeling that it was "hard to end the conversation" with Plaintiff somehow implies something false about Plaintiff's behavior during the conversation. *See id.*

First, it would appear rather obvious that in the second sentence Ms. Heywood was expressing her subjective viewpoint of how <u>she felt</u> during the conversation. Because such a feeling is not capable of being proven false, it is not actionable. Moreover, even if the statement were not a protected opinion, it is not defamatory as it could not reasonably be interpreted to imply *anything* that would remotely "tend to hold [Plaintiff] up to scorn, ridicule, or contempt, or . . . render him infamous, odious, or ridiculous." As such, nothing in the first bullet point of the Email is actionable.

### Second Bullet Point

In the second bullet point of the Email, Ms. Heywood wrote:

> Many months later (perhaps a year?), [Plaintiff] knocked on my door, reminded me who he was (we had only met that one time), said he had been assigned to this route permanently, asked me how I was doing, and handed me my mail (just letters, no packages). He didn't seem to have anyone else's mail with him.

11

Plaintiff does not dispute the accuracy of any of these statements.  *See* Amended Complaint ¶ 53(c).

Instead, Plaintiff's Amended Complaint wrongly asserts that "[Ms. Heywood] falsely alleges [Plaintiff] made some sort of special trip, not in his regular route, or possibly not even during his regular working hour to deliver her mail to her apartment unit."  *Id.*  But, as one can clearly observe from the Email, <u>Ms. Heywood did not make those assertions</u>.  Ms. Heywood had no knowledge of whether Plaintiff had come up to her third floor apartment specifically to see her or if he was there for some other reason, and she did not comment on that subject.  However, even if Ms. Heywood *had* expressed a belief as to why Plaintiff knocked on her door, any such statement would be a protected opinion based on disclosed facts, and therefore not actionable.

Plaintiff also asserts that "[Ms. Heywood] falsely implies that Fling was using his status as a mail carrier, as a ruse to invade her privacy or have unwanted contact with her."  Again, this is simply not something Ms. Heywood said or reasonably implied.  Moreover, even Ms. Heywood had expressed such an opinion, it would be a nonactionable opinion.

Plaintiff cannot pretend Ms. Heywood communicated things she clearly did not write in order to justify his defamation claim.  Ms. Heywood stated that Plaintiff showed up at her door with only her mail in his hands.  This was an accurate statement and not actionable under the law.

### Third Bullet Point

In the third bullet point, Ms. Heywood wrote:

In the past six months, I've run into him a few times in the hall just outside my door in the mornings (ostensibly he was delivering packages). It struck me as a little odd how interested he was in how I was doing and how often I seemed to run into him.

This bullet point communicates the following facts: a) Ms. Heywood had seen Plaintiff "a few times" outside her door in the six months prior to the Email; and b) that during these encounters Plaintiff expressed an interest in how Ms. Heywood was doing. Plaintiff does not suggest these facts are false. *See* Amended Complaint ¶ 53(d).

In this bullet point, Ms. Heywood also opines that she thought that the frequency of Plaintiff's appearances in her hallway, as well as the level of interest he expressed in her well-being were "odd." Because this is clearly her personal viewpoint based on disclosed facts, it is protected opinion. Therefore, nothing in this bullet point could be actionable.

Nonetheless, Plaintiff attempts to suggest the bullet point is actionable by attempting to attribute to Ms. Heywood statements she simply did not make. For example, Plaintiff suggests that Ms. Heywood communicated "that chance encounters she had with Fling over a period of six months *all* occurred 'just outside my door in the mornings.'" *Id.* (emphasis in original). However, this is a grotesque distortion of Ms. Heywood's actual words. Ms. Heywood only stated that she had seen him a few times outside her door. The purpose of such a statement was to note that it was odd she had seen him outside her door multiple times in a short period of time – not to somehow imply that she had *never* seen him someplace else. Plaintiff's representation of Ms. Heywood communication is simply not an accurate or plausible interpretation of what she stated.[3]

Similarly, Plaintiff also incorrectly states that Ms. Heywood in the third bullet point, alleges that "Fling was not [outside Ms. Heywood's door] or in the hallway in general, to deliver packages or mail, but rather to have unwanted or additional social or other contact with her, and

---

[3] Moreover, it is quite obvious that Ms. Heywood did not even imply that she had *only* seen him outside her door in the last six months, since she goes on in subsequent bullet points to describe interactions that occurred between herself and Plaintiff in other locations. *See* Email, fifth bullet point (interaction in lobby) and seventh bullet point (interaction occurred in parking lot).

that Fling was using his status as a mail and package delivery person as a false basis to justify his alleged presence in the hallway outside her door, or as a 'ruse' to satisfy his alleged 'interest' in her." [4]  *Id.*

But again, a simple reading of Ms. Heywood's third bullet point shows that she did not make the statement Plaintiff alleges.  As noted, Plaintiff cannot depict Ms. Heywood as having made statements she clearly did not make in order to create a defamation claim.

Moreover, even if Ms. Heywood *had* stated that that she believed that Plaintiff was misusing his status as a postal employee to have unwanted contact with her, such a statement would be a protected opinion based on disclosed facts.  As such, there is simply no way to construe this bullet point as containing an actionable statement.

### *Fourth Bullet Point*

In the fourth bullet point of the email, Ms. Heywood states:

> In mid-December 2016, he asked me if he could give me a Christmas/holiday card.  I was a little taken aback but said sure.

In the Amended Complaint, Plaintiff argues that this simple sentence "alleges or implies that [Ms. Heywood] was visibly "taken aback" or audibly uncomfortable with Fling's request to give her a holiday card, which she was not."  Amended Complaint ¶ 53(e).

Again, Plaintiff's characterization in his pleading is entirely inconsistent with what Ms. Heywood actually stated.  In saying she was "taken aback" Ms. Heywood was clearly describing her internal feelings, not her outward communication to Plaintiff.  Clearly, a description by Ms. Heywood of her own internal feelings is not capable of being proven false, and is therefore protected opinion.

---

[4] Plaintiff's use of quotes around the words "ruse" and "interest" is particularly misleading since Ms. Heywood did not use those words anywhere in her Email.

The fourth bullet point in the Email is not actionable and Plaintiff's suggestion otherwise is without merit.

### Fifth Bullet Point

In the fifth bullet point of the Email, Ms. Heywood wrote:

> On the morning of December 21, I ran into him in the lobby of 1645 (he had packages for delivery). He asked if I was going away (I had my suitcase) and insisted on carrying my suitcase down the few stairs of the walk despite my protest. Then he needed me to let him back in again since the door had closed.

In the Amended Complaint, Plaintiff argues this statement is false because "Ms. Heywood falsely alleges that she 'ran into' [as opposed to just saw] Fling in the lobby of a building." Amended Complaint ¶ 53(f) (brackets in original).

It is baffling and unclear what Plaintiff believes is false about Ms. Heywood's use of the phrase "ran into" in this bullet point. Such a phrase would ordinarily suggest that Plaintiff and Ms. Heywood found themselves in the same location without previous plans to meet there. Plaintiff's pleading provides no reason to believe that is not an accurate reflection of the facts. *See id.* Moreover, even if there were some distinction between "ran into" and "saw" – as Plaintiff seems to be claiming – the former phrase would still be substantially true and, thus, not actionable. Further, there is no apparent argument for how the phrase "ran into" could possibly lower Plaintiff's reputation so much as to subject him to "scorn, ridicule, or contempt." In sum, Plaintiff's suggestion that the phrase "ran into" is actionable is entirely without merit.

Plaintiff's second objection to this bullet point is that, although he acknowledges that he carried Ms. Heywood's suitcase, he alleges that she did not protest his doing so. Even if Plaintiff's recollection of events were accurate, it would represent a small detail of communication. The overall purpose of this bullet point was to note that Plaintiff insisted on carrying Ms. Heywood's suitcase when she saw him in the lobby. Plaintiff agrees that is what

happened, meaning the statement is substantially true and not actionable.

Moreover, it seems rather clear that an accusation that one carried a suitcase of another individual down some stairs is not the reputation-destroying type of accusation that could support a defamation claim. Therefore, this portion of the bullet point is not actionable either.

### Sixth Bullet Point

In the sixth bullet point of the Email, Ms. Heywood wrote:

> When I returned from my trip, there was a very beautiful card (Crane paper, with my name professionally embossed on it) and a bag of cookies from a local bakery hanging on my door handle. (Just after this, I left a $15 gift card in my box per the USPS website guidance on appropriate holiday gifts for mail carriers with a polite but impersonal note, as I have done for mail carriers in other locations.)

Plaintiff apparently concedes that the information in this bullet point was not false or defamatory. *See* Amended Complaint ¶ 53.

### Seventh Bullet Point

In the final bullet point in the email, Ms. Heywood wrote the following:

> Yesterday, January 10, when I was parking my car at approximately 6:30pm, I noticed a man sitting alone (seemingly doing nothing) in a sedan in the 10-minute parking space outside of 1645. When I was about halfway up the walk to 1645, the man exited the car and called to me (it was Daniel). He hurried up, talked to me, said he was there to "see a friend", and followed me into the lobby of 1645. I again had trouble ending our conversation. Finally I went to check my mailbox and he got in the elevator; I didn't see him after this. I was very uncomfortable during this whole encounter. There was no mail truck to be seen and he had never mentioned having a friend in the building before.

As far as can be discerned, Plaintiff appears to concede in his Amended Complaint that the encounter on January 10, 2017, took place almost exactly as described by Ms. Heywood. *See* Amended Complaint ¶ 53(g).

Given these concessions, it seems clear that Ms. Heywood's final bullet point is not actionable because that statement *was not false*.

As with the other bullet points, in an effort to manufacture a claim, Plaintiff asserts that Ms. Heywood made statements that she simply did not make. *See id.* For example, Plaintiff contends Ms. Heywood stated that Plaintiff was "loitering," even though no such words appear anywhere 1in the Email. *See id.* Similarly, Plaintiff asserts that Ms. Heywood accused Plaintiff of hurrying up "specifically in order to have more unwanted contact with her," even though she did not write that in any manner. *See id.*[5]

Plaintiff also argues that it was false for Ms. Heywood to state that Plaintiff "followed" her "into the lobby of 1645 [as opposed to just entering the building behind her]." *See id.* (brackets in original). Given the ordinary dictionary definition of the word "follow", it is again extraordinarily unclear what Plaintiff sees as the distinction between the word "follow" and his apparently preferred phrase of "entering the building behind her." *See, e.g.,* Cambridge Dictionary (available at https://dictionary.cambridge.org/dictionary/english/follow) (defining "follow" as "to move behind someone or something and go where he, she, or it goes). In any case, whatever distinction Plaintiff is alluding to it his pleading, such a distinction is not defamatory.

Finally, Plaintiff takes issue with Ms. Heywood expressing that she was uncomfortable with her interaction with Plaintiff. As this statement describes Ms. Heywood's personal viewpoint of her own feelings and is not capable of being proven false, the statement is clearly protected opinion. That is especially true given that her statement is part of a larger email the fully discloses the accurate facts on which that feeling was based.

---

[5] Even if Ms. Heywood *had* expressed the opinion that Plaintiff was loitering or seeking to have additional unwanted contact with Ms. Heywood, such an expression would be protected opinion since it would be based on disclosed truthful facts.

Because there is no false or defamatory statement in seventh bullet point, or any of the other statements within the Email, Plaintiff's claims for defamation must be dismissed.

### C.    Even if Ms. Heywood's Email Contained Actionable Statements, the Defamation Claim Still Fails Because the Communication was Privileged.

Under Virginia law, a communication is subject to a qualified privilege if the speaker has an interest in the communication and the communication is made to a party who has a corresponding interest or duty. *Smalls v. Wright*, 241 Va. 52, 54, 399 S.E.2d 805, 807 (1991). In this case, both Ms. Heywood and the condominium managers shared a legal and moral interest in ensuring the overall security and well-being of the residents of the condominium complex. Indeed, in *Smalls*, the Virginia Supreme Court found that concerns expressed about a public employee, such as those expressed here by Ms. Heywood, are qualifiedly privileged. *Id.*

When communications, such as the Email, have a qualified privilege, that privilege can only be lost, "if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." *Id.* "Common-law malice is behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." *Id.*

In order to withstand a motion to dismiss when a communication is protected by qualified privilege, a plaintiff must allege sufficient facts that show he can overcome that privilege at trial. *See, e.g., Gomer v. Home Depot U.S.A., Inc.,* 2016 WL 5791226, at *9 (D. Md. 2016). Unsupported and conclusory allegations are not sufficient in that regard. *See id.*

Plaintiff's Amended Complaint, however, does not present *any* factual allegations that would suggest Ms. Heywood acted with common-law malice. The closest Plaintiff comes to making such an allegation is in Paragraph 54 where he offers the following allegation:

> Upon information belief . . . [the statements] were made by Heywood, with an ulterior motive currently unknown to Fling, but such a motive involving a clear intent of furthering a sequence of events designed to secure some sort of practical or legal result involving an adverse employment consequence to him, in addition to Fling's being disallowed from physically coming back to the 1645 building, or barred from entering, the 1645 building, whether on a mail route, or otherwise.

Amended Complaint ¶ 54.

Considering Plaintiff has alleged that Ms. Heywood's motive in communicating with the Lillian Court's managers is "unknown" to him, it is clear that he cannot allege facts that would show by clear and convincing evidence that Heywood was motivated by "personal spite or ill-will." Moreover, since there are no factual allegations in the Amended Complaint that would suggest Ms. Heywood communicated for any reason other than in the interest of her own well-being and that of her neighbors, Plaintiff has not alleged sufficient facts to defeat the qualified privilege. As such, his claims of defamation should be dismissed for this reason as well.

## II.    Plaintiff Cannot State a Claim for Tortious Interference Because There Was No Intentional Interference Or Improper Methods.

In addition to his defamation claim, Plaintiff has alleged a claim for tortious interference with his employment contract with the U.S. Postal Service. *See* Amended Complaint ¶¶ 71-78.

In order to state a claim for tortious interference with a business relationship, a plaintiff needs to properly allege: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted. *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145, 670 S.E.2d 704, 706 (2009). Further, when the contract at issue is an at-will relationship, a plaintiff must show the defendant employed "improper methods" in interfering with the contract. *E.g., Preferred*

*Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 403-404, 732 S.E.2d 676, 688 (2012). Plaintiff's claim must be dismissed because he cannot show either intentional interference or any improper methods by Ms. Heywood.

### A.    Plaintiff Has Not Alleged Intentional Interference.

In order to properly allege the element of intentional interference, Plaintiff would need to allege factual allegations that show M      s. Heywood's communication was either motivated with the intention of causing the Postal Service to terminate Plaintiff, or that Ms. Heywood knew that such a termination was substantially certain.  *See DurretteBradshaw*. 277 Va. at 146, 670 S.E.2d at 707 (quoting Restatement (Second) of Torts § 766, cmt. j (1979)).

"Mere knowledge of a possible result of certain actions, without more, cannot constitute an intentional interference."  *Cominelli v. The Rector & Visitors of The Univ. of VA*, 589 F. Supp. 2d 706, 716–17 (W.D. Va. 2008), *aff'd* 362 F. App'x 359 (4th Cir. 2010).  In *Cominelli*, the plaintiff was the Chief of the Division of Gastroenterology and Hepatology at UVA Hospital, who was offered a position at the University of Maryland.  Shortly after, the Chairman of the UVA Department of Medicine sent an email to UVA medical personnel stating that the plaintiff had been removed from his position "in response to an ongoing personnel matter."  That email eventually was forwarded to U. Md., and U. Md.'s employment offer was then withdrawn. Based on these facts, the court dismissed the plaintiff's tortious interference claim because, among other things, the plaintiff had failed to show the Chairman had acted with the intent to cause the plaintiff to lose his U. Md. job offer.  The court held this was true, *even if* the Chairman had recognized that the loss of the U. Md. job offer was a possible result of sending the email.

Similarly to *Cominelli*, in the instant case, Ms. Heywood did not send her Email to the Postal Service, but sent it solely to the management of her condominium complex, and there is

20

no factual basis to support an allegation that she intended (or even foresaw) that the communication would be forwarded on to the Postal Service. Additionally, in the Email, Ms. Heywood did not express any intent to see Plaintiff terminated and there is no plausible factual allegation in the Amended Complaint that would suggest she was motivated by such a desire.

Further, even if Ms. Heywood had known the Email would be forwarded to the Postal Service, which she did not, there would be little reason to expect that such a communication would lead to Plaintiff's termination of employment. More reasonably, Ms. Heywood would have expected that, at most, the Email would lead the Postal Service to give Plaintiff some counseling regarding his interaction with residents. In common understanding, a single complaint about a mail carrier, on its own, would not typically lead to that mail carrier's termination. In summary, there is nothing in the Email or the Amended Complaint that would satisfy the requirement of intentional interference. As such, the tortious interference claim must be dismissed.

**B.  <u>Plaintiff Cannot Show That Ms. Heywood Used Improper Methods</u>.**

Even if Plaintiff could show that Ms. Heywood had intentionally interfered with his contract, his claim would also fail because Ms. Heywood did not employ any improper methods.

The only improper method Plaintiff has alleged in his Amended Complaint is that Ms. Heywood's Email constitutes "deceit, misrepresentation, and defamation." *See* Amended Complaint ¶ 76. Because, as demonstrated above, that communication was substantially true in all regards and <u>not defamatory</u>, Plaintiff suggestion that the email constitutes improper methods is without merit.

In similar situations, courts have properly dismissed tortious interference claims that are based on speech that the court has determined was not defamatory.  *See, e.g., S*killstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009); *Tomlin v. Int'l Bus. Machines Corp.*, 84 Va. Cir. 280 (Fairfax 2012); *Cummings v. Addison*, 84 Va. Cir. 334 (Norfolk 2012).

Because Plaintiff cannot show either that Ms. Heywood intentional interfered with his employment relationship or that she utilized improper methods, his tortious interference claim must be dismissed.

### III.    Under Virginia's Anti-SLAPP Law, Ms. Heywood is Immune to Plaintiff's Claims and Entitled to an Award of Her Attorneys' Fees.

In the 2017 Regular Session of the General Assembly, Virginia's legislature joined 27 other states in the country in adopting a state anti-SLAPP law.  *See* SB 1413 (2017).  The legislation, which amended Virginia Code § 8.01-223.2, became effective July 2017.

The purpose of anti-SLAPP laws, like Virginia's, is to prevent a person or entity from using the legal system to chill or punish those with whose speech they disagree by bringing unmeritorious defamation and similar claims based on speech.  *See, e.g., Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 764 (9th Cir. 2017); *Doe No. 1 v. Burke*, 91 A.3d 1031, 1033 (D.C. 2014).

Virginia's Anti-SLAPP Law states the following:

A.  A person shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements [] regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party . . . The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

B.  Any person who has a suit against him dismissed pursuant to the immunity provide by this section may be awarded reasonable attorney fees and costs.

Va. Code Ann. § 8.01-223.2 (emphasis added).

Because the Virginia Anti-SLAPP law is relatively new, there does not appear to be any written judicial interpretation of the statute. Nonetheless, the statute would appear to be relatively straightforward as a textual matter— a defendant is immune from any defamation and tortious interference claims for any statements made to a third party about "matters of public concern". The law further provides that the immunity can only be lost if a plaintiff can show the statements made are both false and the speaker had actual or constructive knowledge of the statement's' falsity, or acted with reckless disregard as to the truth.

### A.    Ms. Heywood's Statements Are Covered by the Virginia Anti-SLAPP Law Because She Was Addressing A Matter of Public Concern.

A statement involves a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216 (2011).

Because misconduct by public employees is clearly concerning to the community, speech raising the possibility of public employee misconduct raises a matter of public concern. *See, e.g., Lane v. Franks,* 134 S. Ct. 2369, 2380, 189 L. Ed. 2d 312 (2014) (accusations of corruption in a public program and misuse of funds raise matters of public concern); *Garcetti v. Ceballos*, 547 U.S. 410, 425, 126 S. Ct. 1951, 1962, 164 L. Ed. 2d 689 (2006) ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."); *Durham v. Jones*, 737 F.3d 291, 300 (4th Cir. 2013) (speech accusing sheriff of requiring deputy to make false alterations to a police report addressed a matter of public concern); *Williams v. Cordillera Commc'ns, Inc.*, 2014 WL 2611746, at *4 (S.D. Tex. 2014) (accusation of criminal conduct by public school teacher was a matter of public concern).

23

In this instance, Ms. Heywood's email raised the possibility that Plaintiff might be acting inappropriately in connection with his position as a public employee. As a postal employee, Plaintiff had access to his customers' addresses and had access of entry to buildings that are otherwise secured. By commenting to the condominium association regarding her concerns with Plaintiff's conduct, Ms. Heywood was raising the possibility that Plaintiff could be misusing his position as a government employee or that he might be prone to do so in the future. Such a topic is clearly a matter of public concern, and is the type of speech covered by Virginia Anti-SLAPP Statute.

**B.    Plaintiff's Claims Against Ms. Heywood Must Be Dismissed Under Virginia's Anti-SLAPP Law Because She Is Immune To Such Claims.**

Plaintiff has asserted claims of defamation and tortious interference against Ms. Heywood for her statements about a matter of public concern. The Virginia Anti-SLAPP Law specifically immunizes Ms. Heywood from both types of claims. *See* Va. Code Ann. § 8.01-223.2(A).

The statute provides that a defendant loses that immunity only if a plaintiff can prove that the speaker made false statements and had actual or constructive knowledge, or reckless disregard, for the falsity of the statements she made.

As demonstrated at length above, Ms. Heywood's statements in the Email were not false— every statement of fact is substantially true. Because the statements were true, Plaintiff has no plausible legal argument for the proposition that Ms. Heywood somehow lost the immunity provided by the Virginia Anti-SLAPP Law.

Moreover, even if Plaintiff could point to a false statement of fact, the immunity would still apply because Plaintiff cannot show knowledge on the part of Ms. Heywood that any of her statements were false. Although Plaintiff has asserted conclusory allegations that her statements

were made "with wanton and reckless disregard of the truth," (Amended Complaint ¶ 59), this Court has repeatedly held that a plaintiff cannot rely on such conclusory allegations to adequately plead that the defendant had knowledge that statements were false at the time of publication. *See, e.g., Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *6 (E.D. Va. 2012); *Hanks v. Wavy Broad., LLC*, 2012 WL 405065, at *12 (E.D. Va. 2012); *Zhang v. Regan*, 2011 WL 1456188, at *8 (E.D. Va. 2011).  Rather the Plaintiff must allege facts sufficient to allow a reasonable fact-finder to conclude that the speaker acted with reckless disregard of the truth.

Because the Amended Complaint does not contain sufficient factual allegations that would suggest that Ms. Heywood had actual or constructive knowledge that her statements were false, there is no plausible argument that Ms. Heywood's immunity under the Virginia Anti-SLAPP Law has been lost.

Therefore, pursuant to the Virginia Anti-SLAPP Law, Ms. Heywood is immune and entitled to dismissal of all the claims asserted against her by Plaintiff in this Action.

## C.    <u>Ms. Heywood Should Be Awarded Her Reasonable Attorneys' Fees</u>.

Although anti-SLAPP laws vary by jurisdiction, they typically provide that a prevailing defendant is entitled to his reasonable attorneys' fees in defending the lawsuit.  The apparent purpose of such fee-shifting provisions is to both compensate the victim of the SLAPP suit and to disincentivize the bringing of such suits altogether.

Based on the policy underlying these provisions, courts generally interpret anti-SLAPP laws to presumptively require the awarding of fees to a successful defendant.  *See, e.g., Doe No. 1 v. Burke*, 133 A.3d 569, 578 (D.C. 2016); *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006); *Castello v. City of Seattle*, 2010 WL 4857022, at *4 (W.D. Wash. 2010).

For example, the District of Columbia passed an anti-SLAPP law that contained an attorneys' fees provision that stated that a court "may award" a successful defendant "the costs of litigation, including reasonable attorney fees." *See* D.C. Code § 16-5504. In interpreting that language, the D.C. Court of Appeals found that when a defendant filed a motion and prevailed under that statute, she was "presumptive[ly entitled to an] award of reasonable attorney's fees on request, unless special circumstances would render such an award unjust." *Doe No. 1 v. Burke*, 133 A.3d 569, 578 (D.C. 2016).

Similarly to D.C. statute, the Virginia Anti-SLAPP Law states that a defendant who "has a suit against him dismissed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2(B). As in *Burke*, the best interpretation of this language is that a successful defendant under the Virginia Anti-SLAPP Law should be presumptively entitled to fees unless special circumstances would render such an award unjust. As no such special circumstances exist here that would suggest an award of fees would be unjust, Ms. Heywood should be granted her fees.

Moreover, even if the fee-shifting provision were interpreted as only providing the opportunity for a court to provide discretionary awards, the Court should exercise such discretion in this case. As noted in exhaustive detail above, Ms. Heywood's Email was not false or defamatory. This would have been obvious to Plaintiff and his counsel from a simple review of the document long before suit was filed. Plaintiff's insistence on bringing an unmeritorious action against Ms. Heywood is the precise type of behavior that states have sought to discourage and disincentivize by enacting these types of laws.

Because Plaintiff knew at the time he brought his claims against Ms. Heywood that the statements made in the Email were clearly not false, Ms. Heywood should be awarded her fees.

## <u>CONCLUSION</u>

It is evident from the Amended Complaint that Plaintiff contends that his dismissal from the Postal Service was unjust and that his union failed to adequately protect him in that process, claims that, on their face, are at least colorable.  As regards Ms. Heywood, however, Plaintiff's claims are not only not colorable, they are unconscionable.  Ms. Heywood was acting completely within her rights as a concerned citizen when she expressed to her condominium complex management her concerns about her interactions with the Plaintiff. If the Plaintiff is permitted to proceed on his claims against Ms. Heywood, no citizen could ever register a complaint or concern about any public employee without fear of being unjustly hauled in the court and compelled to bear the enormous expense of defending claims such as those alleged here.  For these reasons and those stated above, Plaintiff's claims against Ms. Heywood should be dismissed with prejudice and she should be awarded her attorneys' fees.

Dated:  February 14, 2018                    Respectfully submitted,

_____/s/_____
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant Alexandra Heywood*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February 2018, I served a true and accurate copy of the foregoing by filing it electronically with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Christopher R. Rau, Esq.
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA 22205-1940
crrau@aol.com

*Counsel for Plaintiff*

R. Trent McCotter, Esq.
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
trent.mccotter@usdoj.gov

*Counsel for Postmaster General*

Lucas R. Aubrey, Esq.
Sherman, Dunn, P.C.
900 Seventh Street, N.W. Suite 1000
Washington, D.C. 20001
aubrey@shermandunn.com

*Counsel for National Association
of Letter Carriers*

Donald E. Morris, Esq.
Law Office of Anthony D. Dwyer
3957 Western Parkway Suite 320
Richmond, VA 23233
Donald.morris@cna.com

Anthony D. Dwyer, Esq.
Law Office of Anthony D. Dwyer
1954 Greenspring Drive, Suite 435
Timonium, MD 21093
Anthony.dwyer@cna.com

*Counsel for Gates Hudson Community
Management LLC, d/b/a GHA Community
Management and The Unit Owners Association
of Lillian Court At Tysons II, A Condominium*

/s/
Micah E. Ticatch
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Defendant Alexandra Heywood*