**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **DANIEL P. FLING**, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 1:17cv1266 (LO/JFA) |
| **MEGAN J. BRENNAN**, | ) |
| **POSTMASTER GENERAL**, **et al.,** | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**RULE 12(b)(6) MOTION TO DISMISS OF DEFENDANTS**
**GATES HUDSON AND LILLIAN COURT**

COMES NOW your Plaintiff, by counsel, and hereby submits the following

Memorandum of Points and Authorities in Opposition to the Motion to Dismiss filed by

Defendants THE UNIT OWNERS ASSOCIATION OF LILLIAN COURT AT TYSONS II, A

CONDOMINIMIUM ("Lillian Court") and GATES HUDSON COMMUNITY

MANAGEMENT, LLC ("Gates Hudson") (Dkt. #32).

Facts Alleged in the Complaint and Procedural Posture

So much of the above-referenced Defendants' Memorandum in Support of their Rule

12(b)(6) Motion to Dismiss as seems to rely on, or is otherwise predicated on, the contents of an

Affidavit or Declaration or Brittany Dunning, or the contention, inconsistent with the Amended

Complaint, that Plaintiff's action is based upon Dunning providing said allegations and/or e-mail

to a "postal investigator" [OIG], being extrinsic to the Allegations in the Amended Complaint,

should be disregarded, as should that Affidavit.  Neither Gates Hudson nor Lillian Court cites

any authority for the proposition that it is proper for a Court to rely on, or consider, an affidavit

or declaration such as this, in connection with a Rule 12(b)(6) Motion.  As such, Exhibits A and

1

B to the Defendants' Memorandum, (Dkt. 33-2 and 33-2) should be disregarded by the Court on this Motion.

At ¶¶ 56-57 of the Amended Complaint, Fling alleges, upon information and belief, that neither Lillian Court, nor Gates Hudson, had any kind of contractual relation, relation of privity, or specific legal duty of any kind, owed to Heywood, and in 57, again, upon information and belief, that Heywood bore a relationship of lessee to a landlord who did not live there, and that neither Gates Hudson, nor Lillian Court, occupied any status as "landlord," as to Heywood. ¶ 62 of the Amended Complaint further states, upon information and belief, that neither Gates Hudson nor Lillian Court had any contractual or other duty to police, or deal with issues coming from tenant/s of individual unit owner/s. ¶ 65 of the Amended Complaint alleges, upon information and belief, that the referenced Heywood e-mail and allegations contained therein, were furnished to a USPS management official *other than* a postal [police] inspector or law enforcement official.  On a Rule 12(b)(6) Motion, the Court cannot simply disregard the allegations in the Amended Complaint in this regard, and substitute a declaration from a witness mentioned in the Amended Complaint, for the proposition that the *sole* communication/s on behalf of Lillian Court and/or Gates Hudson, regarding Plaintiff, was the e-mail attached to the Amended Complaint, a factual state of affairs the Court should not be so prematurely speculating about or pretermitting.  The Dunning Affidavit, in consideration with Defendants' Motion,  is not a proper application of  Rule 12(b)(6).  In this same regard, the Court also need go further than the Postmaster General's similar attempt, in connection with its own 12(b)(6) Motion, at also at inserting factual matters somewhat extrinsic to the Amended Complaint, in the form of the Notice of Removal Letter furnished to Fling, which reads, in direct contradiction to the Dunning Affidavit:  "Specifically, in January, 2017, the Postal Service became aware of a complaint made

by *the manager of the Lillian Court Apartment Complex, 1635 International Drive, an address on your route."* [capitalizations in original; italics supplied].

Argument

**A.      *The Dunning Affidavit is Irrelevant to a Rule 12(b)(6) Motion***

The Court  is being asked to accept a version of events from Dunning, at Exhibits A and B to Defendants' Gates Hudson and Lillian Court's Memorandum, Dkt. #33-1 & 33-2, that the sum and substance of any and all dissemination of allegations, by way of e-mail or otherwise, by both Defendants Gates Hudson and Lillian Court with the USPS, was not only limited to the one interview Dunning had, when approached by an Inspector General Official, but that this was also *in response to the inquiry of an postal service law enforcement individual,* rather than having been re-published or transmitted or initiated in connection with the "complaint made by the manager of the Lillian Court Apartment Complex" as referenced in the termination letter/Notice of Removal attached to the Postmaster General's Memorandum in Support if her Motion to Dismiss, at Dkt.#30-2.  Both propositions either cannot be true at the same time, or alternatively, Dunning omits from her Affidavit whatever *other* contacts as might have occurred between person/s other than her, in behalf of one or both Defendants, with unknown agents or employees of the Postal Service.  Suffice it to say that overreliance by the Court, or reliance at all, on the factual allegations and contents of either the impermissible affidavit, or the termination letter, in this circumstance, directly demonstrates the difficulties the Court any fact-finder begins to encounter when going any further afield than the  undisputed language provisions of the relevant Collective Bargaining Agreement (CBA) [relevant provisions appearing to be attached at Exhibit #1 to the Postmaster General's Memorandum in Support of her Motion to Dismiss, Dkt.#30-1] , and the Amended Complaint itself, when dealing with all sorts factual allegations inconsistent

with what is alleged in the Amended Complaint, on a Rule 12(b)(6) Motion.  Discovery is

necessary.  Each of Lillian Court/Gates Hudson, and the Postmaster General, gives an

inconsistent account, whether directly or inferentially, as to the source and content of any initial

"complaint" or initial contact or impartation of facts to the USPS, giving rise to an alleged

Inspector General investigation, or perhaps even a third inference, that the Postal Service

somehow already magically just had an Inspector General's investigation of its own, *already*

*going on*, in regard to Fling, when the contents of the e-mail, and/or the e-mail itself, was

furnished and/or transmitted, to an employee or agent of the Postmaster General.  The Court

should not be having to speculate, or entertain such inconsistent versions of the facts given by

two different defendants, as a basis for granting one or more Rule 12(b)(6) Motions to Dismiss.

There was either an initial contact or "complaint," or factual allegations, coming from Dunning,

or from someone else, as "Manager" on behalf of both Defendants, to the USPS management

official "other than a postal inspector," or not.  Presumably, discovery in this case would more

fully answer that question.   For purposes of at 12(b)(6) Motion, however, the Amended

Complaint plausibly alleges that such initial contact or "complaint" and impartation of

defamatory facts regarding Fling, was made by Dunning, or some other person, on behalf of

Lillian Court and Gates Hudson, in contact with a person not "postal inspector," and that is what

the Court permissibly should be considering, in connection with *all* of the Defendants' Rule

12(b)(6) Motions.

## B.  Re-Publication of Defamatory Allegations is Still Defamation

¶ 65 of the Amended Complaint further alleges that Gates Hudson and Lillian Court re-

published to the USPS, "the factual allegations contained in said e-mail, and/or the e-mail itself."

Defendants seem to <u>first</u> argue, at page 4 of their Memorandum, that the fact they did not author or draft the Heywood e-mail is somehow inconsistent with the elements of defamation, which it is not.  While it may well be that "no action was taken as to the content of the email" by Gates Hudson and Lillian Court, it is the very inaction, or lack of investigation, and choice to use the Heyoood e-mail allegations, and re-publication of those allegations, as their own ("Complaint") which is in issue here.  Action was taken, and allegations of Heywood, going possibly beyond the content of the e-mail itself, as alleged in the Amended Complaint, were re-disseminated and/or re-published to the USPS.  According to the Amended Complaint, this re-publication of allegations included, but was not limited to, the e-mail itself.  Amd'd Compl., ¶ 65.  According to the Amended Complaint, this re-publication of allegations took place "without any effort [on the part of Gates Hudson or Lillian Court] at verifying or determining the veracity of any of the allegations, implications or insinuations made by Heywood.  *Id.*  Defendants Gates Hudson and Lillian Court cited to no authority to support the proposition that one cannot be liable for defamation unless one "authored " or "wrote" the defamatory allegations, and that is because there is none.

Statements are actionable as defamation if they have a "provably false factual connotation," and thus are capable of being proven true or false.  *Fuste v. Riverside Healthcare Ass′n,* 265 Va.  127, 575 S.E.2d 858, 861-62 (2003) (*quoting WJLA-TV v. Levin*, 264 Va.  140, 156, 564 S.E.2d 383, 392 (2002).  Statements clearly implying the existence of facts are actionable as defamation.  *Ollman v. Evans*, 750 F.2d 970, 982 (D.C. Cir. 1984).

*Yeagle v. Collegiate Times,* 255 Va. 293. 295, 497 S.E.2d 136, 137 (1998), cited by the Defendants at pp. 6-7 of their Memorandum,  involved a large degree of viewpoint-specific lampooning of a collegiate official, as being the "Dean of butt-licking" as being not only a

protected expression of disapproval of subjective opinion [obvious lampooning], but also as obviously not actually alleging that he was "dean of butt-licking." Here, it is the very stringing together of disparate encounters with Fling, both when he was on duty and off duty, occurring over a two to three-year period of time (Amd'd Compl., Exh.#1 [Heywood e-mail; two-year timeline of events] and weaving of a narrative or implication that he was romantically interested in, or making advances upon Hewyood, and that in that context, there was or is anything "odd" or out of the ordinary, or non-routine, about having three or four alleged different encounters or interactions with Fling, over the course of  period of time comprising some two to three years (Amd'd Compl., Exh.#1, Hewyood E-Mail), or that it was or is somehow "odd" that Fling might actually know, or pay a visit to, in his off-hours, any other person residing in a condo, or even in the building of the Lillian Court Condominium.  The clear implication of Heywood's allegation that *she* had not known Fling was familiar with, or even friendly enough to visit, with any other resident of the building, is that somehow, if that had truly been the case, she would have known that, and she implies this in fact to not be the case, when in fact it was.  Even notwithstanding the lack of a threshold factual basis to support an assertion of qualified privilege, there is also some basis to believe, and it could be inferred from the allegations in the Amended Complaint, that Heywood's apparent exception expressed to others was motivated by spite, in as much as she thought Fling was coming to see or have some sort of unwanted social interaction with her, as to opposed to doing what he was actually doing, which was entering the building to see someone else, in his off-hours.

**C.**     ***Law Enforcement  or Absolute Privilege Does not Apply, or is not Properly Considered***

The Amended Complaint does not state that the subject Heywood e-mail was furnished to a "postal investigator," but alleges that the "factual allegations contained in said e-mail, and/or

the e-mail itself," were furnished, by Dunning, "to a USPS management official other than a postal inspector."  Amd'd Compl., ¶ 65.

Even if the Court were to impermissibly consider the Dunning Affidavit, or otherwise improperly accept the opposite proposition that the only impartation the "factual allegations in the e-mail, or e-mail itself" were only provided to an agent of the Office of the Inspector General of the USPS, as Dunning apparently claims, none of the Defendants cite to any authority whatsoever to stand for the proposition that an agent or person from the Inspector General's Office of the USPS, acting in a non-criminal investigatory capacity [not Postal Police, but Inspector General] qualifies as a communication with a "law enforcement official," as would a communication with a police officer, or an undisputed [by most, of late] "law enforcement agency", such as the Federal Bureau of Investigation.  In this regard,  *Shabazz v. PYA Monarch, LLC*, 271 F. Supp.2d 797 (E.D. Va. 2003) is inapposite to this case, as that case involved a application of a privilege of items reporter to FBI law enforcement personnel.

For the same reasons as have been discussed above, with respect to the distinction between a sworn law enforcement officer, and an Inspector General's office agent or employee, Defendants' apparent reliance on *Marsh v. Commercial AN Savings Bank of Winchester, Virginia*, 265 F. Supp. 614 (W.D. Va. 1967), as somehow supporting the existence of a qualified privilege in this case, is similarly misplaced, as that case also involved statements made by bank tellers to police officers, in regard to a robbery.  Statements to initiate a criminal prosecution qualify as privileged.  *See Daniczek v. Spencer,* 156 F. Supp.3d 739, 752-53 (E.D. Va. 2016).

### D.  Qualified Privilege Does not Apply

Defendants Gates Hudson and Lillian Court cite to generalized authority providing for a qualified privilege, where a communication is made, in good faith, on a subject matter in which

the person communicating has an interest, or owes a duty, legal, moral or social, if made to a person having a corresponding duty. [Dkt. #33, p.5]; *Taylor v. Grace*, 166 Va. 138, 144 (1986). Then, Defendants Gates Hudson and Lillian Court assert the following, partially based upon the impermissible Dunning Declaration [Dkt.#33-2], that: "[i]n the present circumstances, a property manager has a legal and moral obligation to the safety of residents to relay complaints about a postal carrier from one of its residents to the postal investigator upon his request. Similarly, a postal investigator has a duty to investigate." For purposes of at 12(b)(6) Motion, the Gates Hudson and Lillian Court Defendants cannot simply interpose an impermissible Affidavit, and then predicate the existence of an ill-defined limited or qualified privilege, based upon such allegations nowhere appearing in the Amended Complaint or the CBA.

Defendants Gates Hudson and Lillian Court, as does Heywood, vaguely gainsay or allege the existence of some unknown, legally and factually ethereal, "legal and moral obligation" of a "property manager," presumably owed to ensure the "safety" of residents, "to relay complaints about a postal carrier from one of its residents to the postal investigator upon his request." Defendants do not state how or why the supposed "legal and moral obligation" of Lillian Court involves a "corresponding duty," either with Alexandra Heywood, or with an agent of the Postal Service other than a [criminal] postal inspector or investigator. Likewise, the Court should not have to speculate about what attributes a criminal postal investigator has, as opposed to what attributes a Postal Inspector General office employee has, in ruling on Defendants' instant motion. In this regard, discovery is likely to reveal that each office, and personnel thereof, have different missions and functions altogether, and different kind of oaths administered, and different methods and channels of address of things.

In the cases of *The Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985) and *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 153, 334 S.E.2d 846 (1985), the Virginia Supreme Court stated that the common law defense of qualified privilege survives in Virginia, regarding a communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral or social, is qualifiedly privileged, if made to a person having a corresponding interest or duty. *Id.* (*citing Taylor v. Grace*, 166 Va. 138, 144, 184 S.E 211, 213 (1936). The qualified privilege also has otherwise widely recognized application in connection with various intra-employer related communications. *See, e.g., Larimore v. Blaylock*, 259 Va. 568, 528 S.E.2d 119 (2000) (Board of Visitors of educational institution had sufficient interest in faculty tenure proceedings so that communications to Board of Visitors members by members of university tenure committee were subject to a qualified privilege). However, in *M. Rosenberg & Sons, Inc. v. Craft*, 182 Va. 512, 29 S.E.2d 375 (1944), however, the Virginia Supreme Court engages in a fairly lengthy discussion of the types of situations it might deem to qualify as "corresponding duty" situations, none of which factual elements are present in this case, and in which case, the Virginia Supreme Court cites *Vail v. Pennsylvania R.R. Co.*, 103 N.J.L. 213, 136 A. 425, 427 (1927), as being an example of a situation where a "corresponding duty" limited privilege was found *not* to exist. The facts of *Vail* involved the Pennsylvania Railway sending a letter to the plaintiff's employer, claiming the plaintiff there had tendered an invalid ticket or train passage, refused to pay money, and owed the fare.

Taken as a whole, however, the Amended Complaint does not allege circumstances as otherwise would give rise to any duty of any kind, much less any correspondent duties owed, as between Gates Hudson and Lillian Court, on the one hand, and the U.S. Postal Service, on the

other.  Likewise as between Heywood and Gates Hudson and Lillian Court.  The facts of this

case likewise do not fit the traditional mold of qualified privilege situations recognized by the

Virginia Supreme Court in cases like *Great Coastal Express Co. v. Elllington*, 230 Va. 142, 332

S.E.2d 846 (1985); *Peoples Life Ins. Co. v. Talley*, 166 Va. 464, 186 S.E. 42 (1936); *Federal

Land Bank v. Burchfield*, 173 Va. 200, 3 S.E.2d 405 (1939); or *Luhring v. Carter*, 193 Va. 529,

69 S.E.2d 416 (1952).

### E.  The Statements Made Were Defamatory Under a Host of Authorities

In *Swengler v. ITT Electro-Optical Products Div.*, 993 F.2d 1063 (4th Cir. Va. 1993), ITT

filed a counterclaim to Swengler's employment-related discharge claims, on account of Swengler

having written to the Program Manager of the contracting agency, the U.S. Department of the

Army, some one year after the end of his employment, in a writing which seemed to preface each

defamatory statement made with "in my opinion," [in a fashion somewhat similar to Heywood's

empty disclaimer that she is not "making allegations"] that ITT was delivering bad product, one

of its' employees posed a "security risk" being from "Communist China," was infringing on

others' patents in night vision goggles, and that ITT was otherwise mismanaging government

funds and defrauding the government.  993 F.2d at 1067-68.  Reversing a directed verdict for

Swengler on the defamation claim, which had in turn, been predicated on the District Court's

observation of a lack of proof of damages on the part of ITT, the Fourth Circuit entered a

directed verdict for *ITT on the defamation per se claim*, ruling that damages were not necessary,

as what was being alleged there, was defamation *per se*, and the allegations clearly would be

presumed to have prejudiced ITT in its profession or trade.  993 F.2d at 1070.  Taken as a whole,

or some even individually, the Heywood/Gates Hudson/Lillian Court allegations clearly meet

this same standard, as well, requiring the casting aspersion on Fling's honesty or continued

ability or integrity to function as a postal carrier, in the same fashion as the allegations of Swengler did against ITT's night vision goggle manufacturing and business practices. What also makes the *Swengler* case further "on all fours" with Defendants' incorrect contentions in connection with this motion (and Heywood, in connection with *her* 12(b)(6) motion), and this case, is that that the Court also rejected Swengler's similar contention of entitlement to claim a qualified privilege based upon alleged fulfillment of an ill-defined "legal, moral, or social duty," in reporting such items to a Program Manager of the Department of the Army, as not being the subject of any duty at all, as any such duty, if to have arisen at all, according to the Court, would have arisen during Swengler's employment with ITT, which had long since ended when the publications were alleged, also doubting whether Swengler's allegations were made in good faith to begin with, due to his admitted lack of investigation of the same, before making them. Here, it would not have been hard for Heywood, and possibly even less difficult for Lillian Court and/or Gates Hudson, to verify the identity or existence of the other person in the building Fling was going to see, or otherwise receive more information than she had, about his extrinsic reasons for being there, before publishing such a web of allegations and insinuations about Fling.

Without some sort of heightened or intrinsic relation to ITT's business with the Department of the Army, Swengler, the Court held, otherwise occupied a status as to ITT similar to the relationship, or non-relationship, if any, Heywood bore to Lillian Court and Gates Hudson, as well as the Postmaster General, in this case. None of the Defendants cites to any authority to support the proposition that some sort of ill-defined background duty of ordinary care, owed by strangers to one another, most often discussed or analyzed in the context of a negligence case or allegation, can support the application or existence of a heightened relationship, or duty, sufficient to support the existence of any qualified privilege, in this case.

Just how it is that any of the Defendants arrive at the apparent conclusion that the contents of the e-mail are not defamatory to Fling, as described in paragraph 53(a) through (g), is a mystery.  To recap: [a] Fling did not do anything which would have made any reasonable person "uneasy," as implied; [b] Fling did nothing to make conversations "hard to end," [c] Fling did not, as implied, engage in some sort of "frolic and detour" to deliver non-existent mail or packages on her hallway, or otherwise use his status as a mail carrier as a ruse to invade her privacy or have unwanted social contact with her:  "he didn't seem to have anyone else's mail with him"; [d] running into Fling in a hallway at a regular time in the mornings, on a regular mail delivery route, was anything other than a routine encounter; [e] that there was or is anything out of the ordinary about exchange of holiday cards or holiday favors, with a postal carrier; [f] that Fling somehow hijacked or carried her suitcase, despite non-existent protestation/s to the contrary; [g] and on his own time, loitered about the 1645 building, with no legitimate reason to be there, other than to have a chance encounter with her:  (i) "followed me" into  the Lobby [pursuit usage of "followed," as opposed to followed ordinally, through the door);  (ii) "no mail truck to be seen" [clear implication is no business being there; she has already stated he was in "a sedan" [his car]; [iv]"he had never mentioned having a friend in the building before," [clearly implying or imparting unique or specialized knowledge, as if she would necessarily know if Fling **truly** knew someone else in the building, or otherwise had any legitimate reason to be there [as he stated], other than to be loitering around, waiting to stalk her, or have unwanted social or other contact with her.

Statements may be actionable if they have a "provably false factual connotation" and are capable of being proven false.  *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 575 S.E.2d 858, 861-62 (2003) (*quoting WJLA-TV v. Levin*, 264 Va. 140. 156, 564 S.E.2d 383, 392 (2002)).

As discussed above, the Heywood, and in turn, Gates Hudson and Lillian Court allegations regarding Fling, carried a false factual connotation that Fling was not loitering and taking predicate acts in the nature of stalking, or having objectively unreasonable casual social contact with women such as Heywood, but also that he was using his position as a postal carrier as a vehicle through which to do so.  Courts applying Virginia defamation law should consider not only the words themselves, but also the "inferences fairly attributable" to them.  *Wells v. Liddy*, 186 F. 3d 505, 523 (4th Cir. 1999).  In this connection, the Fourth Circuit has stated that a libel-by-implication plaintiff must make out a case that the words must not only must impart the false innuendo, but also affirmatively  suggest that the author intends or endorses the inference. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993).  Both of those elements are present here, with particular regard also to Heywood's endorsement of the proposition that Fling could have no legitimate business at the building, other than to try to have unwanted social contact with her, or deliver mail.  Likewise, Gates Hudson and Lillian Court expressed affirmation of the contents of the e-mail, by providing the e-mail itself.   Defamation must be viewed in context with all surrounding facts and circumstances.  *See Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 50 (1966).

An opinion cannot be the basis for an action for defamation  *See, e.g., Raytheon Tech. Svcs. Co. v. Hyland*, 273 Va. 292, 641 S.E.2d 84 (2007); *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 636 S.E.2d 447 (2006).  It is for the Court, not the jury, to determine whether an alleged defamatory statement is one of fact or opinion.  *Id.*  Defamation per quod arises from innuendo, insinuation, or implication, from the published words, in combination with other intrinsic facts.  *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981).

The Fourth Circuit uses a four-factor test to determine whether a statement is constitutionally protected opinion:  (1) the author's choice of words; (2) whether the challenged statement can be objectively characterized as true or false; and (3) the context of the challenged statement in writing as a whole; and (4) the broader social context of the statement, in to which it fits. *Potomac Valve*, 829 F.2d 1280, 1287-88 (*citing Ollman v. Evans*, 750 F.2d 970, 982 (D.C. Cir. 1984) (statements clearly implying the existence of facts are actionable as defamation).

A defamatory charge may be made expressly, or by inference, implication or insinuation. *Hatfill v. New York Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005) (*citing Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954) ("[i]t matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory"); *Union of Needletrades, Indus. & Textile Employees, AFL-CIO v. Jones*, 268 Va. 512, 603 S.E.2d 920 (2004). Implications of fact can cause as much as much damage to reputation as factual assertions. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).  This is just such a case.  Further, in an action brought, as here, by a private individual to recover actual and compensatory damages for defamatory publication/s, the plaintiff may recover, upon proof by a preponderance of the evidence, that the publication was false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts upon which the publication was based; in this connection, a finding of simple negligent failure to ascertain the truth is sufficient to support an action by a private individual who is not a public official or public figure.  As in any other action involving negligence, the plaintiff must introduce sufficient evidence to establish the negligence.  *See Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 362 S.E.2d 32 (1987), *cert. denied*, 486 U.S. 1023, 108 S. Ct. 1997 (1988) (jury had ample evidence from which to conclude that a reasonably prudent news reporter, writing the article could readily have

contacted a number of other students to verify the accusations and should have done so).

Significantly, that same case also held that a public school teacher was not in the class of "public officials" who must prove *New York Times* malice in order to recover.

WHEREFORE, for the foregoing reasons, your Plaintiff respectfully requests that this Honorable Court overrule Defendants' Gates Hudson and Lillian Court's Rule 12(b)(6) Motion to Dismiss, and if the Court were inclined to grant the same, in whole or in part, for appropriate leave to Amend what is her first iteration herein, of the claims, as to said Defendants, and for such other and further relief as is appropriate to the premises of law, equity and the facts of this case.

Respectfully submitted,

DANIEL P. FLING
By Counsel

_____/s/ Christopher R. Rau_____
Christopher R. Rau (Va State Bar No. 34135)
Attorney for Plaintiff Daniel P. Fling
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA  22205-1940
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2018, I filed the foregoing Memorandum with the Clerk of Court, using the CM/ECF System, which will generate a Notice of Electronic Filing (NEF), and transmit the NEF, together with a copy hereof, to each of the following registered users:

R. Trent McCotter, Assistant U.S. Attorney          Peter D. DeChiara, Esq., *Adm Pro Hac*

Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA  22314
trent.mccotter@usdoj.gov
*Counsel for Defendant Megan J. Brennan,l*
   *Postmaster General*


Lucas R. Aubrey, Esq.
Sherman Dunn, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C.  20001
aubrey@shermandunn.com
*Local Counsel for Defendant NALC*


Anthony D. Dwyer, Esq.
Law Offices of Anthony D. Dwyer
1954 Greenspring Drive, Suite 435
Timoneum, MD  21093
Anthony.dwyer@cna.com
*Counsel for Defendants Gates Hudson*
   *& Lillian Court*

Kate M. Swearengen, Esq., *Adm Pro Hac*
Cohen, Weiss and Simon, LLP
900 Third Avenue
New York, NY  10022-4869
pdechiara@cwsny.com
kswearengen@cwsny.com
*Pro Hac Vice Counsel for Defendant NALC*


Donald E. Morris, Esq.
Law Offices of Anthony D. Dwyer
3957 Westerre Pkwy., Suite 320
Richmond, VA  23233
Donald.Morris@cna.com
*Local Counsel for Defendants Gates Hudson*
*& Lillian Court*


Edward L. Isler, Esq.
Micah E. Ticatch, Esq.
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA  22182
eisler@islerdare.com
mticatch@islerdare.com
*Counsel for Defendant Alexandra Heywood*


_____/s/ Christopher R. Rau_____
Christopher R. Rau (VSB No. 34135)
Attorney for Plaintiff Daniel P. Fling
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA  22205-1940
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail