**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| **DANIEL P. FLING**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 1:17cv1266 (LO/JFA) |
| **MEGAN J. BRENNAN**, | ) | |
| **POSTMASTER GENERAL**, **et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
RULE 12(b)(6) MOTION TO DISMISS OF DEFENDANT ALEXANDRA HEYWOOD**

COMES NOW your Plaintiff, by counsel, and hereby submits the following

Memorandum of Points and Authorities in Opposition to the Rule 12(b)(6) Motion to Dismiss

filed by Defendant ALEXANDRA HEYWOOD.

Facts Alleged in the Amended Complaint and Procedural Posture

So much of the recounting of facts from the Alleged Complaint, and argument relating to

those facts, as otherwise appears, in Plaintiff Fling's Memorandum in Opposition to the Rule

12(b)(6) Motion to Dismiss of Defendants Gates Hudson and Lillian Court, is incorporated into

this Memorandum by reference.  So much of Heywood's lengthy narrative of alleged facts, as

appears in her Memorandum, but not in the allegations contained in the Amended Complaint, as

well as Collective Bargaining Agreement, should also be disregarded by the Court in connection

with both her 12(b)(6) and immunity/attorney's fees motion components.  This includes, but is

not limited to, the entirety of the first paragraph  in the "Background" section at page 6 of

Heywood's Memorandum in Support of Said Motion (Dkt.#40), which contains the following

affirmative allegations:  "Defendant Alexandra Heywood is a single female who, since July

2014, has lived alone in a condominium in the Lillian Court complex in McLean, Virginia.  The

building in which Heywood resides has a mailroom on the bottom floor, where each unit has an assigned mail box for receiving letters and small packages.  Occasionally, when a resident at Lillian Court receives large packages they are delivered to the resident's door.  In all other circumstances, mail is delivered to the mailboxes located on the bottom floor of the building." Each of these allegations is to be disregarded by the Court on this Rule 12(b)(6) Motion of Heywood.

Likewise, Heywood seems to embellish a supposed recounting of allegations contained in the Amended Complaint with a series of factual embellishments, not found in the Amended Complaint, or in her own e-mail attached to the Amended Complaint:  (a) the supposed fact of Fling being in the hallway outside of her door *as she was leaving for work*; [Dkt. #40, p. 7 of 33] (b) Plaintiff delivered a "*seemingly expensive"* card to Heywood; (c) Fling's identity as the operator of a *"non postal service car"* was or is somehow *"unbeknownst"* to her [*Id.*]on postal service car"; (d) [Fling] *"no dressed in his postal uniform"* [*Id.*]; (e) [Fling] "*engaged Ms. Heywood in a conversation while they were entering the building and continued to speak with her once they entered the lobby,"* rather than, as in the e-mail:  "said he was there to "see a friend", and followed me into the lobby of 1645" [*Id.*]; (f) *"again found it difficult to find a polite way to end this conversation"* [*Id.*]; (g) *"over time, the above encounters ....led...Heywood to experience a growing sense of unease regarding Plaintiff"* [*Id.* also not in the e-mail]

<u>Argument</u>

## I.  Statements Made by Heywood About Fling Were False and Defamatory

False implications and innuendoes were made by Heywood, about Fling. Heywood 's strained interpretation, served up to the court, is that any action of a an employee of a governmental unit of any kind, is inherently or necessarily a matter of "public concern," regardless of whether the same occur while he is performing the duties of his employment, or exercising his First Amendment right of free association and assembly, on his own time. The collective implication of Heywood's chronological narrative of brief encounters with Fling, strung out over two or more years, is that Fling was pursuing in unwanted contact with her, in the nature of stalking, and/or loitering about her building, looking for such an opportunity, all of which propositions are false, and defamatory.

Contrary to the contention at page 10 of 33 of Heywood's Memorandum, the authorities cited do not stand for the proposition that Courts "routinely dismiss" defamation claims on early dispositive motions, or that Courts are to do anything but evaluate each case and claim, on its own allegations, facts and merits, which is what the Court is charged with here.

 Attaching ordinary meanings, inferences, and interpretations to Heywood's words, as well as their implications, even though some of the references are oblique, the meaning conveyed is clear: that Fling was pursuing unwanted contact with her, in the nature of stalking, used his status as a postal carrier as a ruse or part of a plan to carry out that end, and and/or was also found to be loitering about her building, in his off-time [an escalation of behavior], "laying in wait" for such an additional opportunity, all of which propositions are false, and defamatory.

The  Virginia Supreme Court has cited to § 559 of the Restatement (2nd) of Torts, for the proposition that defamatory words are those tending to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.  *See Schaecher v. Bouffault*, 290 Va. 83, 91-92 (2015).  The allegations in the Amended Complaint meet that standard, and then some.

In *Jackson v. Liberty University*, C.A. No. 6:17cv41 (W.D. Va., 8/3/17 Mem. op. of Judge Moon at Dkt.. #17), that University was sued on the basis of a press release it had released, implying the plaintiff was guilty of sexual assault, though not stating it straight out, and the following were held to state a claim for defamation by implication:  (a) there was a report of a sexual assault; (b) plaintiff was subject to an investigatory procedure because of the sexual assault; and (c) the result of that process was a finding that plaintiff had violated Liberty's Policy on Sexual Harassment, Discrimination and Assault.  The  Court held that a reasonable interpretation of the Liberty Press Release was that Jackson had committed some form of sexual assault, and that this stated a claim.  The implication that, misusing his status as a Postal Carrier, Fling was loitering around, in order to harass and/or stalk her, is evident, in a similar fashion as the meaning of Liberty's press release was that Jackson was guilty of sexual assault.

To state a claim for defamation by implication, and survive a motion to dismiss, a plaintiff must alleged the following:  (1) that defendants made the statements; (2) that the statements, even if facially true, were designed and intended by the defendants to imply that Fling had engaged in predicate acts of stalking and/or loitering; (3) that in light of the circumstances prevailing at the time they were made, the statements conveyed the defamatory implication to those who heard or read them, and (4) that Fling suffered harm as a result. *Pendleton v. Newsome*, 290 Va. 162, 175 (2015).

No matter how Defense counsel dresses it up or tries to break the language of Heywood's e-mail apart into its component parts, Heywood intends the inference or proposition that running into Fling at "her building" is or was "odd coincidences/occurrences" rather than what it was, a function of daily mail delivery activity in and about the building.  Heywood intends or endorses the inference, in the words of her e-mail (Dkt. #9-1) that her encounters with Fling had a sinister undertone of his monitoring her or pursuing unwanted social contact or physical contact with her, involving vagrancy or loitering behavior on private property, indicative of some sort prurient or inappropriate level of interest *in her* individually:  (i) "He didn't seem to have anyone else's mail with him"; (ii) [he] "ostensibly" [purportedly, but not actually] he was delivering packages" (iii) related, [misuse of mail carrier status]; (iv) "it struck me as a little odd how interested he was in how I was doing and how often I seemed to run into him"; (v) [he] was "seemingly doing nothing" [loitering, waiting, did not "belong" there]; (vi) he said he was there to "see a friend" [quotation marks used in original e-mail; expression of non-endorsement of truth and improper conveyance of being in a position to be the "arbiter" of the truth of that statement, through use of quotation marks]; (vii) [he] "followed me into the Lobby of 1645" [transitive verb usage; "followed me"].  Through her use of language, Heywood intended or endorsed that a reasonable person receiving or interpreting the words of her e-mail, would make these fact conclusions she intimates, insinuates, or implies.

There are also sufficient, non-conclusory allegations also, in the Amended Complaint, to support the proposition that Heywood only initiated a complaint with Lillian Court and Gates Hudson, out of spite or ill will, as a result of Fling, at her last encounter with him, affirmatively stating his reason for being there was to visit someone else, and not somehow seemingly there to seek attention from, or pay attention, to her, as nonetheless insinuated by her e-mail

communication.  By her own chronological narrative, it is only when Fling shows up at the building, on his own time, and says flat out that his presence there is to see someone else, and had nothing to do with paying attention to her, that she decides to go complaint to someone about his behaviors.  What is noteworthy about Heywood's apparent recounting of events, in this regard, is:  (a) a seemingly disproportionate level of focus and clarity of detail, as to happenstance encounters with a mail carrier in hallways, dating back over a matter of *years* [sort of like remembering every encounter you had with the FedEx delivery person/s over the last year or two], as having something to do with her; and (b) improperly conveying the factual proposition that Fling, on his own, off-duty time, and when he ran into her at the building and told her he had to go, and was there to see someone else, was not or *could not legitimately have been present at or in the building to see someone else, as he claimed,* rather than to have [apparently unwanted] contact with Heywood, or that he had somehow "run" up to *her*, or the building's entrance, for any purpose other than to gain entry, to go see someone else who lived in the building.  Heywood clearly endorses the false factual proposition that Fling had no business being in the building that evening, and that his explanation of being there to see someone else was false.

## II.  Statements Made by Heywood About Fling are Not Subject to An Absolute or Qualified Privilege.

Plaintiff's discussion and argument of cases and authorities related to the non-existence of a judicial or other qualified privilege, filed in his Memorandum in Opposition to the Motion to Dismiss of Gates Hudson and Lillian Court, in the circumstances of this case, are hereby incorporated as if set forth in this Memorandum.

In general, in Virginia, no duty exists to warn or protect others from perceived criminal acts of a third person, because such acts cannot reasonably be foreseen.  *Commonwealth v.*

*Peterson*, 286 Va. 349, 749 S.E.2d 307 (2013). This is also not a situation like *Sailes v.*

*Richardson, et al.*, C.A. No. 3:16cv325, 12/22/17 Slip. Op. of Judge Gibney, at p. 8, where the

reporting party had duty to provide a report to the Virginia Department of Education, regarding

Standards of Learning (SOL) testing irregularities, and the said department also clearly had a

corresponding interest in receiving the report in connection with its investigation of the testing

irregularity.

     The burden of proof and persuasion with respect to the defense of qualified immunity

rests on the party asserting its application. *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013)

(*citing Meyers v. Baltimore County, Md.,* 713 F.3d 723, 731 (4th Cir. 2013)).

     In a case somewhat more analogous to the qualified privilege claim in this case, *Boyce v.*

*Unisys Corp.*, 50 F.3d 1145 (2nd Cir. 1995), Inspector General proceedings of the State Inspector

General were not deemed sufficiently "quasi-judicial" enough to give rise to an absolute

immunity claim when Unisys gave information pursuant to an inspector general subpoena; the

Court there also goes to some length to point out that the inspector general investigation or

proceeding not initiated by Unisys to begin with. 50 F.3d at 1150.

     Also of note is Judge Ellis' recent opinion in *Doe v. Roe & Marymount University, et al.*,

1:7cv401 (E.D. Va. 1/31/18), in which the individual Defendant also filed a threshold Motion to

Dismiss, asserting that various statements or complaints she made to "Marymount University

Investigators" were subject to a qualified privilege. 1/31/18 Ellis Mem. Op. at p.4. Marymount's

investigators apparently determined, as a threshold matter, that "there was sufficient information

alleged to suggest that violations of [Marymount's Sexual Misconduct Policy] may have

occurred." *Id.,* at p. 5. In that case Roe argued, as Heywood apparently does here, that: (a) she

was or is entitled to some sort of absolute immunity; (b) or at the least, she was entitled to some

sort of qualified immunity in the statements made to Marymount personnel. *Id.,* at p. 13. In this regard, the Court (Judge Ellis) cites to *Penick v. Ratcliffe*, 149 Va. 618, 628 (1927), for the proposition that in Virginia, the qualified privilege has been recognized only to extend to "quasi-judicial proceedings, made before tribunals having similar attributes similar to those of courts." *Id.* In determining whether a given proceeding is quasi-judicial, the Court is to look to notions of due process, including whether there is an unbiased adjudicator [none here], and the ability to marshal, present and cross-examine evidence [also not present here]. *Katz. v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp.2d 909, 921 (E.D. Va. 2004). Judge Ellis goes on to find that the Marymount University disciplinary proceedings, a much more elaborate due process scheme than what transpired as between Gates Hudson and Lillian Court, or their interactions with the Postmaster General, were not sufficiently "quasi-judicial" to lead to a finding of any basis for qualified immunity, particularly on a motion to dismiss [as here]. The same logic should apply here. Citing to *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Congress has no power to declare substantive rules of common law applicable in a state…and no clause in the Constitution purports to confer such a power upon the federal courts"), Judge Ellis also declines the Roe defendant's invitation to fashion a brand new, absolute and undifferentiated immunity, for putative victims who report alleged criminal behavior against them, to anyone other than the police.

Even if a basis for qualified privilege existed in this case, which it does not, such a qualified privilege, if it existed, could be lost or abused out of existence by a showing: (1) the statements were made with knowledge that they were false or with reckless disregard for their truth; (2) the statements were communicated to third parties who had no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will; (4) the statements

included strong or disproportionate language to the occasion; or (5) the statements were not made in good faith. *Cashion v. Smith*, 286 Va. 327, 338-39, 749 S.E.2d 526, 531 (2013).   The question of whether a defendant has lost or abused a privilege is a question of fact. *Cashion*, 286 Va. at 337.  As referenced above, there is sufficient factual matter in the Amended Complaint to support the proposition that Heywood's statements about Fling were made out of spite.

### III.  The Amended Complaint States a Claim for Tortious Interference with Business Relations Against Heywood, Lillian Court, and Gates Hudson

In Virginia, a plaintiff must prove four elements in order to establish a claim for tortious interference: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *DurrettBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009).   All of these elements are present, as to Heywood, Lillian Court, and Gates Hudson, in the Amended Complaint.   Generally, the alleged interferer cannot be a party to the business expectancy. *Beall v. Abbott Labs.*, 130 F.3d 614, 621 (4th Cir. 1997). Rather, a tortious interference claim requires the existence of three actors: two parties to the contract and a third party who interferes with, or induces one of the parties to breach the contract. *Storey v. Patient First Corp.*, 207 F. Supp. 2d. 431, 448 (E.D. Va. 2002). However, if it can be shown that an agent of a party to the contract was acting outside of the scope of his employment in tortiously interfering with such contract, then the aggrieved party may be entitled to recover . . . ." *Storey*, 207 F. Supp. 2d. at 448 (citing *Wuchenick v. Shenandoah Memorial Hospital*, No. 99-1273, 2000 WL 665633, at *17 (4th Cir. May 22, 2000)).  Here, Plaintiff's employment contract was terminable at will, but "the fact that a

contract is terminable at the will of the parties does not make it terminable at the will of others." *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987). Where a contract is terminable at will, the plaintiff must not only allege and prove that the interference was intentional, but also that the defendant "employed 'improper methods'" in securing termination of the contract. *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (Va. 2011) (quoting *Duggin*, 360 S.E.2d at 836 (Va. 1987)). The Supreme Court of Virginia has recognized that defamation may constitute an improper method of interference. *Duggin*, 360 S.E.2d at 836.  As such, the Heywood's contention that the Amended Complaint does not properly allege the use of a improper methods, is incorrect.  Plaintiff has sufficiently pled tortious interference. Plaintiff alleged (1) he had a valid at-will contract; (2) Defendants knew of this contract; (3) Defendants maliciously and intentionally interfered with the contractual relationship; and (4) Plaintiff was damaged as the result of the termination of his at-will contract. Plaintiff also pled an improper method of interference—defamation. *Duggin,* 360 S.E.2d at 836; *see also Stamathis v. Flying J, Inc.*, No. CIV.A.7:01CV00838, 2002 WL 1477586, at *7 (W.D. Va. July 9, 2002) (denying defendant's motion for summary judgment regarding tortious interference with at-will employment contract because genuine disputes of material fact existed as to improper methods of interference, including defamation); *Gilmore v. Peoples Serv. Drug Stores, Inc.*, No. LT-446-4., 1991 WL 834973, at *1 (Va. Cir. Ct. May 17, 1991) (overruling demurrer to claim of tortious interference with at-will contract because plaintiff alleged interference through defamation). Because Plaintiff properly pleaded that Defendants defamed her in order to secure her termination, Plaintiff properly pleaded that Defendants' tortious interference with Plaintiff's at-will employment contract was through improper means.  The same logic applies here.  If it was foreseeable to Heywood, that her complaint to Lillian Court and Gates Hudson, might result in

one or both of those parties, either (a) communicating her apparent complaints contents to the

the USPS; and/or (b) an act of Lillian Court and/or Gates Hudson banning or restricting Fling

from accessing any part of the common areas at Lillian Court [a "no trespass notice," which of

course, would prevent him from doing a substantial portion of his then-job on the route Heywood

herself acknowledges Fling told her told her it took him a long time to work towards and get)

either and/or both engenders a sufficient level of readily foreseeable damage to Fling's route

assignment, and business expectancy, if not outright termination thereof.  It is enough that it was

foreseeable that she would damage the route assignment/s in this regard.  It is not up to the Court

to speculate as to what "common understanding" is about whether a complaint against a mail

carrier would lead to his or her termination, much less whether or not Heywood's understanding

was or is reflective of any "common understanding" in that regard.


## IV.  The Immunity Provisions of Va. Code § 8.01-223.2 Do Not Apply to Heywood

The manner and method by which Defendant Heywood sweepingly makes claim to

immunity and entitlement to attorney's fees in her motion, in effect, forces the Court to usurp the

role of the jury by making pretrial factual determinations relevant to the claim of immunity, on a

Rule 12(b)(6) Motion, rather than on a Summary Judgment motion after discovery, under Rule

56 of the Federal Rules of Civil Procedure.  So much of Heywood's 12(b)(6) Motion as seeks

dismissal of claims, also seeks:  (a) seeks a finding from the court that this statute applies; and

(b) that the statute provides, in the form of statutory damages, attorney's fees.  As such, under Va

Code § 8.01-223.2, Heywood seeks an apparent monetary award of judgment, against Fling, as

one would be otherwise required to do at law, via Complaint or Counterclaim, and through

production of evidence and taking of testimony, solely through a Rule 12(b)(6) Dismissal

Motion. There is nothing in the statute which specifies either the Virginia, or Federal, procedural method through which such immunity to is to be asserted, if to be asserted at all, and certainly nothing in the statute which says that it would be proper for a Court to summarily decide that entitlement, either on demurrer, or a Rule 12(b)(6) Motion.

In *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), the D.C. Circuit grappled with the problem of assertion, in federal court in D.C., of the "special motion to dismiss" provisions of the District of Columbia "anti-SLAPP" statute, regarding certain statements made by Mahmoud Abbas, questioning whether he was "enriching himself" at the expense of Palestinian and U.S. Taxpayers. The Court squarely holds in this case that the "special motion" provisions of the D.C. anti-SLAPP statute do not apply in, at least, a federal court exercising diversity jurisdiction, because Rules 12 and 56 of the Federal Rules of Civil Procedure establish the standards by which a Defendant can obtain pretrial dismissal of a claim or matter, in federal court. This case, and Heywood's attempted use of the Virginia immunity statute, in conjunction with a Rule 12(b)(6) Motion, are that much further removed, or attenuated, than the circumstances in *Abbas* as the D.C. statute, at the least, contains the "special motion" provisions Heywood had apparently somehow allowed herself, under the Virginia statute, which makes no provision for a such a "special motion." Suffice it to say that an increasing number of federal courts would refuse to entertain such a summary motion, as Rules 12 and 56 of the Federal Rules of Civil Procedure, between them, are a "comprehensive scheme for testing the sufficiency of a complaint."

The statute relied upon reads, in its entirety, as follows:

**8.01-223.2. Immunity of persons for statements made at public hearing or communicated to third party.**

A. A person shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or

a claim of defamation based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii) made at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body. The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

B. Any person who has a suit against him dismissed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.

Va. Code § 8.01-223.2, as enacted, re-enacted, and amended by Acts of Assembly 2007, c. 798; 2016, c. 239; 2017, cc. 586, 597.  Heywood's misplaced claim to protection under this statute would have to be based upon § 8.01-223.2(A)(i) above, as there is no allegation of any communication to any statement being made at, or in connection with, any proceeding pending before, a public body.   However, in order to make claim to the immunity purported to be conferred by the statute, as a procedural matter, she would appear to have, at the least, an initial burden of proof, or persuasion, to make out a case, from a factual point of view, that:  (a) her communications to Gates Hudson and Lillian Court, both oral and written, involved a lawful exercise of First Amendment Rights on matters of "public concern," one assumes, presumably based upon First Amendment precedent otherwise existing before the statute? [one is left guessing see below]; and (b) that Fling's claims of defamation and tortious interference with prospective business advantage are *solely* based upon her statements about a  matter of "public concern."  Both (a) and (b) are lacking here.

As codified in the Virginia Code, Va. Code § 8.01-223.2 immediately follows Va. Code § 8.01-223.1, which states:

**§ 8.01-223.1. Use of constitutional rights.**

In any civil action the exercise by a party of any constitutional protection shall not be used against him.

Va. Code § 8.01-223, as enacted by Acts of Assembly 1985, c. 192.

The effect of Heywood's attempted use of § 8.01-223.2 would be to use Fling's constitutional exercise of his right to petition the government, in this case, against him, in violation of § 8.01-223.1.  It is difficult to reconcile the wording of § 8.01-223.2 as being somehow consistent, in the application, with 8.01-223.1,

This statute appears in 8.01 of the Virginia Code, otherwise relating to "actions," appearing with a host of other statutory causes of action appearing in other sections of the same Title.  The statute appears to further contain a "constructive knowledge" exception, which the Court is being called upon to wholly gainsay or speculate about, as to Heywood, for purposes of ruling on Heywood's motion.  A person has constructive knowledge of a fact if, through the exercise of reasonable care, he or she should have known the fact, even if he or she did not actually know the fact, and/or acted negligently with respect to uncovering the truth, before a given publication.  *See Lewis v. Kei*, 281 Va. 715, 725 (2011).  As referenced above, Heywood could easily have confirmed or obtained information about who Fling was seeing at the building, at the least, by asking him, but this did not occur before her intimating to others that this was a false explanation by Fling.    Heywood's apparent communications to Lillian Court and Gates Hudson, as alleged in the Amended Complaint did not involve a "matter of public concern," and at the least, at this stage, Fling is entitled to the inference that Heywood's said communications, were not.

In the context of the First Amendment, a matter is of "public concern" when it is "a subject of general interest and of value and concern to the public *at the time of publication*.  *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).  What day-to-day interactions Fling had with

Heywood and/or others in and around postal delivery areas, both on and off the job, at the time they were made by Heywood, could hardly be said to be newsworthy, or "of concern to the public" at the time those allegations were published to third parties, Lillian Court and Gates Hudson, by Heywood.  At the least, such a soft finding of fact ought to be made by a jury or fact-finder, after hearing all of the evidence.  Heywood's contention that those seemingly banal, day-to-day encounters with Fling, over a two-year period, and being subjectively left "unconfortable" or that it being "hard to end the conversation" somehow made them a matter of "public concern," when they were published to Gates Hudson and Lillian Court,  underpins her contention that she did not defame Fling, as from a basic logic standpoint, it would appear that her supposed concern or complaint regarding Fling would not even have a *colorable* chance at amounting to something even approaching a "public concern," unless  what she was intimating about what Fling, his behavior, and intentions, and what Fling was *really* "up to" in this series of "odd occurrences," so menacingly strung together, and so suffused with cynicism and doubt about Fling's hidden agenda and true intentions, as set forth in [and between the lines of] Heywood's e-mail, were not only being conveyed, but were also *true*, which they were and are not.

Authorities decided under similar statutes in other states do not seem to support the notion that any of Heywood's communications, referenced in the Amended Complaint, "concern[ed] a matter  of public interest, which requires a specific showing by the person so claiming, and a burden of proof on Heywood, not present or met here. *See Damon v. Ocean Hills Journalism Club,* 85 Cal. App.4[th] 468, 474 (2000).  In *McGarry v. Univ. of San Diego*, 2007 WL 2040578 (Cal. App. 7/17/17), statements about the termination of a widely known college football coach were held to involve a matter of public concern.  However, in  *Doe v. Gangland Prods., Inc.*, 802 F. Supp.2d 1116, 1123 (2011), it was held that revealing plaintiff's

apparent gang nickname on a television program was not speech on a matter of public interest or concern.  Likewise, in *Whitaker v. A&E Television Networks, et al.*, 2009 WL 1383617 (Cal. App. 5/18/09), a false depiction or picture of plaintiff in a documentary as an HIV/AIDS sufferer, when in fact the Plaintiff was not even HIV-positive, did not concern a matter of public interest or concern.

There is some authority to support the proposition that what constitutes a matter of public concern, in a given case, is for the court to decide, as a matter of law.  *Mackin v. Cosmos Broadcasting, Inc.,* 2008 U.S. Dist. LEXIS 40715, * 7 (W.D. Ky. 5/21/08).

It is not enough for Heywood to just gainsay, as she does, without any authority, that since her communication involved a USPS employee, or governmental employee, that this is a sufficient condition to render Fling a "public official," for purposes of First Amendment practice, application of Va. Code § 8.01-223.2, and this case.

As a matter of First Amendment law, the level of intent a plaintiff must prove on a defamation claim depends, in part, on the status of the plaintiff, and whether he or she was acting as a private or public person, in determining wither intent must be proven with "actual malice." *Home v. WTVR, LLC*, 3:16cv92 ( E.D. Va. ; 4/6/17 Mem. Op. of Gibney, J., at p. 7 (*citing New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  The Supreme Court has further broken down two categories of "public persons" that warrant this heightened standard as to intent: public officials and public figures.  Courts decide, as a matter of law, whether a given person qualifies as a public official or public figure.  *Id.* (*citing Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001)).  Pertinent to a Rule 12(b)(6) Motion, however, this analysis begins with the *presumption* that Fling, the plaintiff, is a private individual, subject to Heywood's burden to prove that he was or is a public official or public figure.  *Id.*  Public officials are government

16

employees that "have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. *Id.* *(citing Rosenblatt v. Baer*, 383 U.S. 75 (1966)). In other words, a position is more likely to be held to convey such an authority to the public if the responsibilities include making policy determinations, making recommendations, and exercising discretion. *Id.,* at 7-8 (*citing Arctic Co. v Loudoun Times Mirror*, 624 F.2d 518-521-22 (4th Cir. 1980). None of these attributes attach to, or are otherwise alleged in the Amended Complaint, in connection with Fling's status as a city mail carrier in this case. In the *WTVR* case cited above, the Court found that a Director of Budget and Finance for a school system was just such a public official, because her position involved management of the school budget, an issue of consent public concern. *Horne v. WTVR* Mem. Op., *supra*, at p. 9.

Whether a plaintiff is a public figure is a question of law for the court to decide. *Carr v. Forbes, Inc.*, 259 F.33 273, 278 (4th Cir. 2001). The Fourth Circuit has recognized three distinct classes of public personalities: (i) "involuntary public figures," who become public figures through no purposeful action of their own; (2) "all-purpose public figures," who achieve such pervasive fame or notoriety that they become public figures for all purposes and in all contexts; and (3) "limited-purpose public figures," who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues. *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1551-52 (4th Cir. 1994). Fling is likewise none of these, and carries the attributes of none of these categories, as alleged in the Amended Complaint.

## V. Va. Code § 8.01-223.2 is Unconstitutional in Any Attempted Application of that Law to Fling, and Unconstitutional on Its Face

Heywood's "special motion to dismiss," as conjoined with a Rule 12(b)(6) Motion here, amounts to is a summary attempt, in the purported name of protecting one private citizen's purported constitutional right of expression, by cutting off another private citizen's (Fling's) right

to petition the courts, and obtain a jury trial, and an award of damages, based upon common law remedies.

### V(a).   Va. Code § 8.01-226.2 is Unconstitutional in Its Application to Fling Based Upon the Allegations in the Amended Complaint

To the extent that this new statute could be remotely consistent with the interpretation that no jury is involved in the determinations made pursuant to that statute, which contention is otherwise contested by Fling,  Article I, Section 11 of the Virginia Constitution, states:  "t]hat in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred.  The Seventh Amendment to the U.S. Constitution similarly protects right to trial by jury.  Both of these rights are abrogated or violated by any application of Va. Code § 8.01-226.2, to the facts of this case.

Article I, Section 12 of the Virginia Constitution, makes provision for freedom of speech and of the press, as well as the right to peaceably assemble, stating:  "…that an citizen may freely speak, write and publish his sentiments on all subjects, *being responsible for the abuse of that right….and to petition the government for redress of grievances*, and more notably:

> that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the people to peaceably assemble, and to petition the government for redress of grievances.

Virginia Constitution, Article I, Section 12 [italics added].

Va. Code § 8.01-223.2, if applied to Fling on the facts of this case, would chill or abridge his right to petition the government for grievances, and in fact penalized him for exercising that right, in the form of this lawsuit, as to the Heywood, Lillian Court, and Gates Hudson defendants.

The General Assembly of the Commonwealth has otherwise proclaimed that "[t]he common law of England, insofar as it is not repugnant to the Bill of Rights and Constitution of this Commonwealth, shall continue in full force…and be the rule of decision, except when altered by the General Assembly. Va. Code § 1-200. When construing a statute in derogation of common law, as Va. Code § 8.01-223.2 is [no such immunity as this existed at common law], the Court is to apply several established principles. First, a statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested. *Herndon v. St. Mary's Hospital, Inc.*, 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003).

A statutory provision is ambiguous when it may be understood in more than one way. *Supinger v. Stokes*, 255 Va. 198, 205 (1998). An ambiguity also exists when statutory language lack clarity or precision, or is difficult to comprehend. *Supinger,* 255 Va. at 205. Va. Code § 8.01-223.2 is grossly lacking in clarity or precision, and is difficult even for lawyers to comprehend, much less laypersons, in purportedly requiring common persons and laypersons, as Heywood seems to contend, to make a determination, and be right about that determination, as to whether a given defamatory communication was or is "regarding a matter of public concern that would be protected under the First Amendment of the United States Constitution."

A statute will be construed as a whole. *Cummings v. Fulghum*, 261 Va. 73, 77 (2001). A statutory provision will not be held to change common law unless the legislative intent to do so is plainly manifested. *Linhart v. Lawson*, 261 Va. 30, 35 (2001). Further, even where such a change is intended, a change to the common law will only be recognized where it is expressly stated in the words of the statute or is necessarily implied by its language. *Mitchem v. Counts*, 259 Va. 179, 186 (2000). A statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language, because there is a

presumption that no change was intended. *Id.*    Statutes in derogation of common law [as Va. Code § 8.01-223.2 is] are to be strictly construed, and not to be enlarged in their operation by construing them beyond their express terms. *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 181 (1965).    When and enactment does not cover the entire subject covered by the common law, it abrogates the common law rule only to the extent that its terms are directly and irreconcilably opposed to the common law rule. *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988).

In this case, Heywood's Motion, and request for attorney's fees, involves use of a statute which fails to provide fair notice regarding when and how a statutory immunity, and attorney's fees, claims, both in derogation of common law, are to be applied, and also the application of that statute to Fling, in this case, has the effect of unconstitutionally chilling Fling's right to petition the government, and courts, in this case.  To that extent and otherwise, the said statute is unconstitutional in its application to Fling, and the manner in which it is being employed or misused by Heywood, is inconsistent with the due process guarantees tied up in the application of Rules 12 and 56 of the Federal Rules of Civil Procedure.  Fling, or any other person, literally must engage in guesswork to ascertain what, if any, types of communications or speech are subject to the immunity set forth therein.

**V(b).    Va. Code § 8.01-223.2 is Unconstitutionally Vague On Its Face**

Duly enacted laws are presumed constitutional. *Marshall v. Northern Virginia Transp. Authority*, 275 Va. 419, 427 (2008).  The constitutional prohibition against vagueness derives from the right of fair notice embodied in the Due Process Clause. *See U.S. v. Williams*, 553 U.S. 285, 128 S. Ct. 1830, 1845 (2008).  The language of a law is unconstitutionally vague if persons of "common intelligence must necessarily guess at the meaning of the language and differ as to

its application." *See Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). For the reasons set forth above, a statute such as this, which purports to require persons of common intelligence to literally guess as to whether a given defamatory or tortious utterance to a third party is "regarding a matter of public concern that would be protected under the First Amendment of the United States Constitution," is unconstitutionally vague.

> **V(c)** **Application of Va. Code § 8.01-223.2 to Fling, in this Case,**
> **Would Violate the *Noerr-Pennington* Doctrine**

The vague statute sought to be used by Heywood as a shield in this case, also has the effect of not only chilling, but the desired and requested effect of punishing Fling, in the form of a summary attorney's fees award, for his apparent temerity to file a lawsuit naming Heywood as Defendant. This not only violates Va. Code § 8.01-228.1, by using Fling's availment of his constitutional right of petitioning the courts, against him, but also impinges on, or violates the immunity Fling enjoys, under the *Noerr-Pennington* doctrine, under which those who petition the government [as here] for redress of grievances, whether by efforts to influence legislation, executive action, or by seeking redress in court, are immune from liability for such activity under the First Amendment of the U.S. Constitution. *See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). An exception to that *Noerr-Pennington* immunity is recognized where the petitioning party's activity is found to be "sham" for threats, intimidation or coercive measures, primarily to harass or discriminate against the putative defendant. *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 593 F.Supp.2d 840, 844 (E.D. Va. 2008). This doctrine grants First Amendment immunity from civil liability, such as that asserted by Heywood here, relating to participation in petitioning activity, such as litigation. *IGEN Int'l v. Roche Diagnostics, GmbH*, 335 F.3d 303, 310 (4th Cir. 2003). The First Amendment and Noerr-

Pennington do not protect "sham litigation," that is:  (1) objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, and (2) instituted in subjective bad faith.  *IGEN*, 335 F.3d at 312.  Under this standard, the burden actually shifts to Heywood, to establish that this litigation, and/or claims against her, was or is a sham.  *Id.*  The *Noerr-Pennington* doctrine applies equally to labor-related litigation.  *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 691-92 (5th Cir. 2010).  It should also be noted that such access-barring litigation behavior as is being attempted by Heywood, impermissibly effectuates  a complete workaround or "end run" around the "gate-keeping" functions otherwise served by the notice, safe harbor, and other standards tied up in Rule 11 of the Federal Rules of Civil Procedure, as the objective of Rule 11 is not to reward those claiming to be victimized by litigation, but to deter baseless filings and curb abuses.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Fling is not some sort of Sheldon Adelson or Donald Trump-like figure, with lots of money and clout to sue opponents or others who say things they don't like, or out of some sort desire to "silence" Heywood, and it should be obvious to the Court that he is a common man, suing for a *remedy*, as well as to clear his name, in this case, and not, as Heywood would seemingly have the Court believe, out of some sort of misplaced desire to silence her. The *in terrorem* attempt of Heywood at misusing and/or applying this extremely problematic immunity statute to a common man suing over a real claim, such as Fling, is not only shameful, but even if somehow a correct legal application, would **not** present an otherwise appropriate basis, from any equitable or legal standpoint, for a court to make what is obviously a *discretionary* (as opposed to mandatory, or presumed) "may" standard for award of attorney's fees, as Heywood apparently deems herself entitled to as well.

Conclusion

WHEREFORE, for the foregoing reasons, your Plaintiff respectfully requests that the Court deny Heywood's Rule 12(b)(6), and Immunity Assertion, and claim for attorney's fees, in their entirety, and were the Court inclined to grant the same, either in whole or in part, for such leave as is appropriate to the fact that the Amended Complaint in this case presents the first iteration of Plaintiff's claims for relief as to Defendants Heywood, Gates Hudson, and Lillian Court, and otherwise for such other and further relief as is appropriate to the premises of law, equity and the facts of this case.

Respectfully submitted,

DANIEL P. FLING
By Counsel

_____/s/ Christopher R. Rau_____
Christopher R. Rau (Va State Bar No. 34135)
Attorney for Plaintiff Daniel P. Fling
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA  22205-1940
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2018, I filed the foregoing Memorandum with the Clerk of Court, using the CM/ECF System, which will generate a Notice of Electronic Filing (NEF), and transmit the NEF, together with a copy hereof, to each of the following registered users:

R. Trent McCotter, Assistant U.S. Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA  22314
trent.mccotter@usdoj.gov

Peter D. DeChiara, Esq., *Adm. Pro Hac*
Kate M. Swearengen, Esq., *Adm. Pro Hac*
Cohen, Weiss and Simon, LLP
900 Third Avenue
New York, NY  10022-4869

*Counsel for Defendant Megan J. Brennan,*
   *Postmaster General*

Lucas R. Aubrey, Esq.
Sherman Dunn, P.C.
900 Seventh Street, N.W., Suite 1000
Washington, D.C.  20001
aubrey@shermandunn.com
*Local Counsel for Defendant NALC*

Anthony D. Dwyer, Esq.
Law Offices of Anthony D. Dwyer
1954 Greenspring Drive, Suite 435
Timoneum, MD  21093
Anthony.dwyer@cna.com
*Counsel for Defendants Gates Hudson*
   *& Lillian Court*

pdechiara@cwsny.com
kswearengen@cwsny.com
*Pro Hac Vice Counsel for Defendant NALC*

Donald E. Morris, Esq.
Law Offices of Anthony D. Dwyer
3957 Westerre Pkwy., Suite 320
Richmond, VA  23233
Donald.Morris@cna.com
*Local Counsel for Defendants Gates Hudson*
*& Lillian Court*

Edward L. Isler, Esq.
Micah E. Ticatch, Esq.
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA  22182
eisler@islerdare.com
mticatch@islerdare.com
*Counsel for Defendant Alexandra Heywood*

      /s/ Christopher R. Rau
Christopher R. Rau (VSB No. 34135)
Attorney for Plaintiff Daniel P. Fling
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, VA  22205-1940
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail